A90A1140, A90A1141, A90A1142, A90A1144. SCROGGINS
v. THE STATE.
A90A1143. MURRAY v. THE STATE.
(401 SE2d 13)

BIRDSONG, Judge.
These are joint appeals by four defendants convicted of various offenses committed during a fracas following a police response to a "domestic" call. Gregory Scott Scroggins was convicted of aggravated assault with intent to murder and of the misdemeanor offense of affray; Paul Orson Murray, Jr., was found guilty of affray and felony obstruction; Greg Scroggins' father, Philip Elbert Scroggins, Sr., and mother, Angie C. Scroggins, were found guilty of felony counts of obstruction but sentenced as for misdemeanor obstruction.

On January 29, 1989, about 2:00 a.m., Officer D. P. Crook responded to a 911 call made by Greg Scroggins from a convenience store near Smyrna, Georgia. Greg Scroggins and his roommate Paul Murray, who had been arguing at the store, were seen by the store clerk leaving on foot. Officer Crook followed and soon saw them engaged in an argument by the side of the road. The officer motioned for Murray to approach the police vehicle, but Murray and Scroggins ran. Officer Crook followed them to Scroggins' parents' house nearby, where an altercation ensued between Murray and Scroggins. Officer Crook called for back-up assistance. Mr. and Mrs. Scroggins came out of the house in their nightclothes and participated in a struggle to get the officer away from their son, who, by this time, was "out of control." When back-up officers arrived, they succeeded in putting "flexi-cuffs" on Scroggins' hands behind his back, but he continued to kick the officers.

Ultimately, Officer Crook got Greg Scroggins to the ground and straddled him. He heard Scroggins making noises with his mouth as if to bring up spittle; then Scroggins raised forward and bit Office Crook on the forearm. The bite was strong enough to tear through the officer's long-sleeved shirt, and left distinct, full-mouth bite wounds which took ten months to heal. Thereafter, at the hospital, Greg

Scroggins told a nurse that he was "HIV positive," i.e., infected with the AIDS virus. Being so informed, Officer Crook went to Scroggins and said, "Dude, do you have AIDS?" Scroggins just looked at him and laughed. He had just two months earlier been diagnosed as having the HIV virus.

On May 25, 1989, each defendant was indicted for affray and obstruction of an officer, in Indictment No. 89-1228. All were arraigned on July 7, 1989, and all demanded a speedy trial. Calendar call was scheduled to be held October 12.

At the October 12 calendar call, Greg Scroggins learned he had that day been indicted in Indictment No. 89-2319 for two felony counts of aggravated assault: aggravated assault upon the person of Officer Crook with intent to murder, and aggravated assault by assaulting Officer Crook with his teeth in a manner likely to result in serious bodily injury.

Greg Scroggins was advised that day that arraignment and trial of this new indictment for aggravated assault would be held in four days, October 16, and that all charges would be tried jointly. The State served Scroggins with a list of nine witnesses, but advised him only one, an AIDS expert, would be called. On October 16, Greg Scroggins asked for a continuance for adequate time to prepare for defense of the new charges, and filed a demand for list of witnesses, demand for scientific reports, demand for defendant's statements, and demand that Officer Crook submit to an HIV test. The trial court refused Scroggins' motion for extension of time to file motions and prepare for trial, and denied Murray's and Mr. and Mrs. Scroggins' motions for severance. The next day (October 17) the trial court heard Scroggins' motion to suppress evidence of a positive HIV virus test made pursuant to warrant, and his motion in limine to exclude evidence of homosexuality. The motion to suppress the HIV test result was granted for irregularity in the warrant, pursuant to OCGA § 31-17A-1.

The trial court did grant a two-day continuance for the trial, but no more, it seemingly being evident that Scroggins, who in September filed his own motions in limine concerning the AIDS issue, was aware AIDS might become an issue in the case.

Appellants were tried jointly on October 18, 1989. They here consolidate their appeals. *Held*:

1. Appellant Greg Scroggins contends the verdict of guilty for aggravated assault with intent to murder is not supported by evidence, as there was no evidence the HIV virus can be transmitted by human saliva, as the expert witness testified there are no documented cases of the virus being transmitted through saliva, and that there is at best only a "theoretical possibility" the virus can be transmitted via human saliva.

(a) Appellant contends the State did not prove the bite was a "deadly weapon" as it was required to do. See *Talley v. State*, 137 Ga. App. 548 (224 SE2d 455).

Appellant has misconstrued the express Code provisions under which he was indicted and tried. OCGA § 16-5-21 (a) (1) and (2) provides: "A person commits the offense of aggravated assault when he *assaults*: . . . (1) *With intent to murder*, to rape, or to rob; *or* . . . (2) With a deadly weapon *or* with any object, device, or instrument which . . . is likely to or actually does result in serious bodily injury." (Emphasis supplied.) Appellant was indicted and convicted of "aggravated assault . . . with intent to murder." In *Thadd v. State*, 231 Ga. 623, 624 (1) (203 SE2d 230), involving an indictment for aggravated assault with intent to rob, the Supreme Court noted that under the statute a person commits aggravated assault when he assaults with intent to murder, rape or rob, *or* with a deadly weapon. "Thus there is no requirement that the assault must be with a deadly weapon in order to convict of this offense." Id. See *Hanvey v. State*, 186 Ga. App. 690 (368 SE2d 357).

OCGA § 16-5-21 (a) (1) proscribes the commission of assault *with the intent* to accomplish the more serious crime of murder, robbery or rape. No more need be alleged or proved. The statute deliberately sets out the offense of having *intent*, as disjunctive to an assault *with a deadly weapon*.

This law expressly proscribes, as a discreet offense, not the *attempt* to murder, but an *assault* made "with *intent* to murder." See *Harper v. State*, 94 Ga. App. 264, 267 (94 SE2d 105), as to the comparison of "attempt" and "intent." The law has an indisputable interest in censuring assaultive behavior committed with the *intent* to do another more serious crime, irrespective of the method of assault. OCGA § 16-5-21 (a) (1) classifies as "aggravated," those assaults which, though not committed with a deadly weapon or with a device likely to produce serious bodily injury, are made with the intent to commit the felonious crime of murder, robbery, or rape.

It is essential to point out that the concept of requiring proof that appellant's bite and/or saliva constituted a deadly weapon is irrelevant to the offense charged and does nothing but confuse the determination of the offense.

Prior to the comprehensive criminal code revisions in 1968, the law provided: "An assault with intent to murder, by using any weapon likely to produce death, shall be punishable [as a felony]." Penal Code 1910, § 97; see legislative history notes, OCGA § 16-5-21; *Wright v. State*, 168 Ga. 690 (148 SE 731). It was often held that to convict for assault with intent to murder, the assault must have been made with a weapon likely to produce death. See, e.g., *Reddick v. State*, 11 Ga. App. 150 (74 SE 901). But the Supreme Court, in *Wright v.*

*State,* supra at 695, held that the statute did not intend to define what constitutes the offense, but merely upgraded its status from misdemeanor to felony. Moreover, at the common law the offense of assault with intent to murder had never required proof of use of a deadly weapon or any weapon at all; and the statute did not *require* it, but *if the indictment charged* the use of a weapon likely to produce death, then of course that element must be proved. Id. at 694; *Paschal v. State,* 125 Ga. 279, 280 (54 SE 172); *Walker v. State,* 124 Ga. 440, 441 (52 SE 738); *Johnson v. State,* 92 Ga. 36, 38 (17 SE 974); *Monday v. State,* 32 Ga. 672.

Despite the fine exposition in *Wright,* supra, and despite the crystal clear language of the 1968 enactment, there remain in some quarters confused ideas that the genetic core of felony assault is the use of a deadly weapon. *Watts v. State,* 142 Ga. App. 857 (237 SE2d 231), cited by both sides in this case for various propositions, confronted an indictment charging assault with intent to rob "by pointing a shotgun, a deadly weapon," at the victim. The defendant's act was especially obnoxious, in that he grabbed the victim's neck, held a sawed-off shotgun to his head and threatened to blow his brains out. Under the statute, it was clearly unnecessary for the State to allege that assault with intent to rob was committed with a deadly weapon. But, having averred it, the State had to prove it.

The gun in *Watts,* supra, was unloaded, which fact alone proves the beauty of a statute expressly recognizing that such behavior, as a mere assault (see OCGA § 16-5-20), coupled with the intent to rob, rape or murder, is well classified as an aggravated assault. In *Watts* the court sought to show that in "the assault context" a weapon can be deadly because the victim thinks it is, whereas in the "specific intent context," the fact that a weapon is deadly "is used to support an inference that the defendant had a specific intent to kill." Id. at 858.

*Watts* also said cases such as *Paschal,* supra, did not apply, being "specific intent" cases which hold "that a specific intent to kill cannot be inferred from the use of a weapon unless it is shown, as a matter of fact, that the weapon in the way it was used was likely to produce death." *Watts* at 859. But, *Paschal* did not address such a proposition; rather, it held that if the indictment cites a deadly weapon, "the character of the weapon [must be proved]."

The State indicted appellant Greg Scroggins for assault with intent to murder; this was all it needed to allege. There was no requirement to prove the method of assault was deadly or likely to inflict serious bodily injury. *Thadd,* supra; *Wright,* supra; *Paschal,* supra; *Walker,* supra.

The legislature, in making such conduct an aggravated assault, viewed it as no trivial thing. The assault, coupled with the intention to do worse, is the crime.

This case is different from *United States v. Moore*, 846 F2d 1163 (8th Cir.), where an HIV infected inmate bit two officers. Moore was not charged with or convicted of *assault with intent to murder*, but of assault with a *"deadly and dangerous weapon."* Id. at 1164. The federal court found that *under the evidence presented in that case*, it could reasonably be found that a human bite was a deadly and dangerous weapon without regard to whether it might transmit the AIDS virus.

Appellant cites a recent Alabama case to bolster his assertion that his bite must be proved a deadly weapon. But that case, *Brock v. Alabama*, 555 S2d 285, was decided upon a statute which provides: "(A) person commits the crime of assault in the first degree if: (1) with intent to cause serious physical injury to another person, he causes serious physical injury to any person *by means of a deadly weapon or a dangerous instrument."* (Emphasis supplied.) The Alabama statute, unlike the Georgia statute, is not aimed at a mere assault committed with *intent* to murder. Under Alabama law, including statutory definitions of deadly weapon, we cannot fault the *Brock* decision, but it bears no relation to this case or to Georgia law.

According to the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560), the evidence was such that a rational juror could find proof of the assault with intent to murder pursuant to OCGA § 16-5-21 (a) (1), beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis, without proof that the method used constituted a deadly weapon.

(b) The jury's finding of "intent to murder," under the *Jackson v. Virginia* standard is supported by the evidence that appellant sucked up excess sputum before biting Officer Crook, this being evidence of a deliberate, thinking act rather than purely spontaneous; and that appellant laughed when the officer asked him if he had AIDS.

Intent is a matter of mind and is evidenced by external circumstances capable of proof (*Smith v. State*, 36 Ga. App. 643 (137 SE 794)); the intent of the accused may be gathered from all the circumstances of the case, and is a matter for the determination of the jury. *Patterson v. State*, 85 Ga. 131 (11 SE 620). It is not necessary to find an *inference* of such intent in the suggested fact that appellant's bite was a deadly weapon, and we do not consider such inferential evidence in the course of this review. At best, what appellant's defense amounts to is the defense of impossibility. But, "[i]t is no defense to a charge of criminal attempt that the crime the accused is charged with attempting was, under the attendant circumstances, factually or legally impossible of commission *if such crime could have been committed had the attendant circumstances been as the accused believed them to be."* (Emphasis supplied.) OCGA § 16-4-4. An

assertion (which was never conceded by the expert and never in evidence) that it was "impossible" to transmit the HIV virus in this fashion is even less a defense to the charge of assault "with *intent* to murder" than it would be to an accusation of *attempt* to murder, since an "attempt" requires a more substantial act towards completion than does mere "intent." See *Traylor v. State*, 77 Ga. App. 439 (1) (48 SE2d 749). On sound reasoning, the court in *Indiana v. Haines*, 545 NE2d 834, relied on a similar statute to uphold an attempted murder conviction on similar facts.

"*[A]s it is the intent to commit a crime, not the possibility of success, that determines whether an act or omission constitutes the crime of attempt . . . it is not necessary that the crime be factually possible, nor is it necessary that there be a present ability to complete the crime. . . .*" (Emphasis supplied.) 22 CJS 153, Criminal Law, § 123. As the evidence supports a rational finding appellant believed he could transmit the virus in the method used, it is immaterial to the offense involving *intent* that it *might* have been impossible to do so.

Appellant analogizes this case to one where a defendant assaults another by "shooting" him with a toy pistol, since appellant asserts the bite of an AIDS-infected person is perfectly harmless, like a "toy." Obviously however, not even that defendant, if he was sane, would believe he could murder by shooting with a toy pistol, and so he could not have the *intent to murder*. We must asseverate, however, the case would be very different if the defendant did not know the pistol was a toy, but thought it was real, and used it to assault another with the intent to murder. In those circumstances he would certainly be prosecutable under OCGA § 16-5-21 (a) (1) for an assault "with intent to murder."

Evidence of an intent to murder, coupled with the assault, exists beyond a reasonable doubt in this case. But beyond that, we think the peculiar circumstances of this case, including the dearth of scientific knowledge as to the precise ways and means of transmitting this disease, support a finding that, by his deliberately biting another and injecting saliva into the blood stream while knowing he was infected with the AIDS virus, appellant's assault amounted to such wanton and reckless disregard as to whether he *might* transmit the disease, that the jury could infer a malicious intent, i.e., to murder. *Gallery v. State*, 92 Ga. 463 (17 SE 863). The jury could either find specifically that appellant believed he could transmit the disease in this fashion *or that he did not care whether he transmitted the deadly disease. Gallery*, supra.

*A wanton and reckless state of mind is sometimes the equivalent of a specific intent to kill.* See *Biegun v. State*, 206 Ga. 618, 629-630 (58 SE2d 149); *Gallery*, supra. "The law infers guilty

intention from reckless conduct; and where the recklessness is of such character as to justify this inference, it is the same as if defendant had deliberately intended [it]." *Pool v. State*, 87 Ga. 526, 530-531 (13 SE 556). Malice is a matter of intent, and the intent of an accused is a matter peculiarly within his own knowledge; there is no way to prove it except by inference from established facts. *Sheffield v. State*, 241 Ga. 245, 246 (244 SE2d 869).

All the circumstances of the case, including the unsettled state of the body of knowledge as to the transmission of the AIDS virus, support a jury inference beyond a reasonable doubt that a murderous intent was proved by direct or circumstantial evidence (*Paschal*, supra), or by inference of malice (defined as " 'wickedness of purpose; a spiteful or malevolent design against another; a settled purpose to injure or destroy another' " (*Patterson*, supra at 133)) from an act so wanton and reckless that it "betrayed a reckless disregard of [another's] life equivalent to an actual intention deliberately to kill him," (*Johnson*, supra at 40), or from an assault committed while intending to kill *or not caring whether he kills . . . or not.*" (Emphasis supplied.) *Gallery*, supra.

(c) The trial court erroneously charged the jury that, in order to convict of the offense, it must find the use of a deadly weapon and intent *to murder.* This error caused defendant no harm; it simply placed an extra burden of proof upon the State and therefore enured to appellant's benefit. *Emmons v. State*, 142 Ga. App. 553 (236 SE2d 536).

It is suggested, however, that the jury might have used such finding to support an inference of intent to murder (see *Patterson*, supra at 133-134), and that to this extent the verdict cannot stand, for lack of evidence. If any such inference were made, we would find it harmless, since the other evidence in the case amply supports the finding of intent to murder and it is highly probable such error did not affect the verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

In any event, we have no hesitation in saying that, as in all cases, whether a thing or an action is a deadly weapon is for jury determination. (*Hall v. State*, 189 Ga. App. 107, 108 (375 SE2d 50)), and the evidence in this case does support such a finding beyond a reasonable doubt.

A deadly weapon is one *capable of producing death.* The expert in this case did not testify that it was impossible to transmit the HIV virus via human saliva, but only that there were no such "documented cases" although there were two "reports" of it. But, he made it clear the disease had come to the forefront of medical attention in much less than ten years and there was a great deficiency of information on the subject. He stated that he himself would not "deep French kiss a beautiful woman," and that medical uncertainty was

such that standard medical procedure was to wear protective gloves when dealing with *all* bodily fluids of persons, even those not known to be infected with the virus. From the assiduousness of direct and cross-examination, by the end of the expert's testimony the jury could reasonably conclude that it knew about as much as medical science knew at the date of trial, which was not very much, and amounted mostly to what had been so far *documented* as *having occurred*, with hardly anything ruled out as "impossible," and with not much by way of conclusion being ventured, except that *the disease itself is deadly*. The expert testified that the "risk" of transmitting the virus via saliva was somewhat less than the documented risk of transmitting the virus into the blood stream via a needle prick, which was one in 250. From this, we think a reasonable juror could conclude, in common wisdom, that the statistical "risk" of contracting AIDS from an infected person via a needle prick is in actuality a *random* risk, which alike applies to each and every one of the 250 persons, or to all of them if a large enough theory group is considered, i.e., the total population; and that therefore *every* needle prick introducing the blood of an infected person is as *potentially deadly* as the next, and therefore, in the most reasonable common sense of the word, every one is *deadly*. The same may be said of the supposed much-reduced "risk" of transmitting the virus through saliva.

Appellant makes much of the expert's testimony that there is only a "theoretical possibility" of transmittal of the virus through saliva, but a "theoretical possibility" is clearly a "possibility," or else the phrase has no meaning. So long as medical science concedes this "theoretical possibility," the jury was well within the evidence to consider the human bite of a person infected with the AIDS virus to be "deadly." Where a medical expert under thorough examination, testifies to his knowledge of the subject and still cannot state one way or the other whether a particular instrumentality is "deadly," the jury in considering all the circumstances, including the risk to the victim and to society, is at least as competent as the witness to determine whether it was an instrument likely to produce death. See *Moran v. State*, 120 Ga. 846 (48 SE 324).

Most significantly, the expert's testimony showed if an HIV infected person has an open wound, lesion or sore, or gum disease in his mouth through which his *blood* might be transferred into the blood stream of another, as with a bite, then the victim's risk of contracting the virus is the risk associated with transmittal via the *blood*, and not of the spittle or sputum. On this basis, the jury could rationally find the risk of transmitting the virus through a human *bite* rendered appellant's bite a "deadly" weapon, if not his spittle, beyond a reasonable doubt.

In this connection, appellant and his amici allude to OCGA

§§ 16-5-60 and 31-22-9.1, contending that since the legislature in § 31-22-9.1 (a) (4) set forth what "bodily fluids" were to be involved (blood, semen, and vaginal fluids) in HIV testing and, by extrapolation, in reckless conduct of persons infected with the HIV virus, only these can be recognized as "deadly" or "dangerous." This argument is shortsighted. The legislature is required to enact statutes which are not unconstitutionally vague, and this is as much as should be drawn from § 31-22-9.1. Science has not limited the media of AIDS to blood, semen, and vaginal fluids, and certainly the expert in this case did not do so; it seems highly unlikely the legislature would undertake to make such a pronouncement. Neither OCGA § 16-5-60 nor § 31-22-9.1 has anything to do with a jury's consideration of what is a deadly weapon in determining whether there has been an aggravated assault.

Although the jury was not required to find appellant's bite was a deadly weapon to find the offense of assault with intent to murder under OCGA § 16-5-21 (a) (1), we conclude no possible harm came to appellant from the imposition on the State in the jury charge of the extra burden of proving the bite was a deadly weapon, and such a finding was supported by evidence beyond a reasonable doubt. *Jackson v. Virginia*, supra.

We find the verdict of aggravated assault with intent to murder to be well supported by the evidence in the case. *Jackson v. Virginia*, supra.

2. Appellant contends the trial court erred in denying him a continuance as to trial for aggravated assault, thereby denying him effective assistance of counsel and procedural due process. We find no reversible error in the circumstances of this case. Appellant clearly did know, as shown by the filing of his own motions in limine prior to being indicted for aggravated assault, that the issues at trial might encompass the AIDS virus. Appellant was granted a two-day continuance. He has not suggested any evidence or witness or any matter whatsoever which he could have produced in defense if he had had more "time to prepare." Mere shortness of time does not by itself show a denial of the rights of the accused, and mere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses. *Tucker v. State*, 172 Ga. App. 86 (321 SE2d 817). This case involves serious issues, but they are not intricate or convoluted, and appellant has not suggested any manner in which he could have defended more adroitly if he had had more time. In fact, the testimony of the expert witness was as much in appellant's favor as not, and appellant relied upon it heavily to prove his defense both below and here, i.e., that his bite was not a deadly weapon.

Appellant contends he had no time to subpoena expert witnesses in his behalf, but inasmuch as the issue in the case is not whether his

bite was a deadly weapon, but rests upon the question of his *intent*, appellant could not have helped his case by producing a dozen experts to say his bite was not a deadly weapon. See OCGA § 16-5-21 (a) (1); *Thadd*, supra; *Wright*, supra. In any event, defense counsel's examination of the expert witness was thorough, showing no lack of familiarity with the subject. If there is anything exculpatory appellant could have done with more time, he has not suggested it here or on motion for new trial, as is his duty. Appellant has the burden on appeal to show not merely error, but harm, and he has not done this. *Osborne v. State*, 193 Ga. App. 276 (387 SE2d 383); see *Willis v. State*, 193 Ga. App. 659 (388 SE2d 869).

3. The trial court did not err in denying appellants' motions for severance of trial of the offenses of affray and obstruction, from the aggravated assault charges made against Greg Scroggins. The record shows there were no antagonistic defenses among the issues, and appellants have asserted none; the number of defendants did not create confusion as to the evidence and law applicable to each defendant; and no evidence prejudicial to the misdemeanor defendants was admitted against Greg Scroggins. See *Stephens v. State*, 170 Ga. App. 267, 268 (316 SE2d 847), as to the standards and the trial court's discretion for granting motions to sever trial.

We reject the assertion that the AIDS issue relevant to appellant Greg Scroggins operated to the prejudice of the remaining defendants. There is no evidence or suggestion in the record that any of the other defendants is infected with the AIDS virus, and the jury was given enough information from the expert witness to prevent any conclusion that their mere association with appellant made them liable to have the virus.

4. Appellants contend the trial court erred prejudicially in denying Greg Scroggins' motion in limine seeking to prohibit the State from making any reference to issues of homosexuality. Any relevance in the State's question whether Greg Scroggins and Paul Murray had a sexual relationship would be limited to a showing that a particular emotional relationship existed such as exists among many other persons engaged in domestic disputes, which might have affected the conduct of those particular appellants in their commission of the offenses of affray and obstruction of an officer. As to relevance of evidence in questionable cases, see *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360). Even assuming error in the denial of the motion in limine, no harm was done to any appellant, since the hospital nurse denied Scroggins told her he was homosexual and since Murray testified their relationship was platonic only. As for the suggestion that the raising of the issue of homosexuality discriminates against homosexuals or against persons with the AIDS virus or who associate with infected persons, the jury was well advised by the expert, and we can take

judicial notice, that the disease itself is no respecter of persons and does not discriminate, so any suggestion of sexual preference was harmless as a matter of fact. There was no evidence as to how Greg Scroggins contracted the disease and, as to any of the offenses, we fail to see what it matters. And, the evidence did not tend to place appellant's character in issue. *Rollins v. State*, 164 Ga. App. 452, 453 (297 SE2d 352).

5. Appellants Greg Scroggins and Paul Murray moved for directed verdicts of acquittal as to affray, on grounds the indictments alleged a fight occurred at the convenience store whereas the evidence shows there was no fight at the store. The trial court did not err in denying these motions. As to the standard for directing a verdict of acquittal in a criminal case, see OCGA § 17-9-1. The evidence did not demand a finding that Scroggins and Murray did not engage in a fight with another person "in and about" the convenience store as to the indictment alleged. There was no fatal variance in the indictment and proof justifying acquittals. OCGA § 17-9-1 (a); see *Henry v. State*, 154 Ga. App. 120 (267 SE2d 653); *Ingram v. State*, 137 Ga. App. 412 (224 SE2d 527).

6. Appellants contend the trial court erred in granting the State's ex parte motion to subpoena the expert witness, Dr. Rimland; erred in allowing evidence upon the release of confidential AIDS information in violation of OCGA § 24-9-7; and erred in denying appellants' motion for new trial.

We find no error. Prior to the State's efforts to subpoena the expert witness and obtain information as to Scroggins' having the HIV virus, or AIDS, the appellant on September 25 filed his own motion in limine asserting that the State, in the affray and obstruction counts then pending, would attempt to introduce evidence or "otherwise leave the jury with the impression that he has tested positive for the HIV virus and to make references to his current medical condition," which he asserted was irrelevant and would place his character in evidence.

OCGA § 24-9-40, which governs in this case (see OCGA § 24-9-47 (s) (1) (B)), provides that the privilege of a patient in *any* medical information "shall be waived to the extent that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding." Appellant placed "at issue" the issue of AIDS in this case by his conduct in committing an act which is inextricably linked to the question of his having AIDS, or where his having the virus is the gravamen of the prosecution. Accordingly, the statute as to disclosure of confidential AIDS information (§ 24-9-47) was not available to appellant in this case as to any indicted charge, in the first instance, since Scroggins no longer had any confidential right in it.

Moreover, we must conclude on its face that OCGA § 24-9-47 was never intended to be a shield in a prosecution for criminal conduct involving the AIDS disease. OCGA § 24-9-47 (t) does not require notice to a defendant of the State's ex parte request for disclosure of AIDS information "in connection with a prosecution for the alleged commission of reckless conduct under subsection (c) of Code Section 16-5-60." OCGA § 24-9-47 (t) (1) (A). This provision proves an overriding policy to facilitate prosecution of HIV infected persons for criminal conduct with potential for endangering any member of society. We think obviously the legislature's failure in this directive to include prosecutions for a crime of *wilful* conduct, as in this case, by a person with the AIDS disease or HIV virus, was an oversight.

7. In view of our ruling in Division 6, infra, the denial of Greg Scroggins' motion to seal the record concerning any confidential AIDS information was not error.

8. We find no error in the trial court's denial of appellants Greg Scroggins' and Paul Murray's motions for supersedeas bond. Appellants were not denied the opportunity for hearing on this issue. There was evidence of record to support the trial court's findings pursuant to *Birge v. State*, 238 Ga. 88 (230 SE2d 895). The burden to present sufficient evidence authorizing a stay of execution and release on bond is upon the defendant, following conviction for a crime (*Pressel v. State*, 161 Ga. App. 488 (287 SE2d 780)); and, the trial court's decision is one of discretion, and we will not find abuse of it if there is any evidence to support it. *Cooper v. State*, 178 Ga. App. 709, 716-717 (345 SE2d 606). There was evidence supporting the trial court's denial of supersedeas bond as to both Greg Scroggins and Paul Murray; therefore, we find no error.

Accordingly, we find no cause to reverse any of these convictions upon any enumeration of error raised by any appellant.

*Judgments affirmed. Banke, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 5, 1990 —
REHEARING DENIED DECEMBER 6, 1990 —

*Gregory Z. Schroeder, Bruce S. Harvey, Michael R. Hauptman,* for appellants.

*Thomas J. Charron, District Attorney, Charles M. Norman, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys,* for appellee.