652 So.2d 611 (1995)
STATE of Louisiana
v.
Donald CAINE.
No. KA 94 0119.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*612 Doug Moreau, Dist. Atty. by Richard Johnson, Asst. Dist. Atty., Baton Rouge, for appellee the State of La.
David Price, Public Defender, Baton Rouge, for appellant Donald Caine.
Before FOIL, WHIPPLE and KUHN, JJ.
FOIL, Judge.
The defendant, Donald Caine, was charged by bill of information with attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant was subsequently adjudicated a second felony habitual offender and sentenced to fifty years at hard labor with credit *613 for time served.[1] He appealed, urging the following assignments of error:
1. The trial court erred in denying the defendant's motion to suppress.
2. The trial court erred in accepting a verdict not supported by sufficient evidence.

Facts
At approximately 9:00 p.m. on March 24, 1993, the defendant entered a convenience store on Nicholson Drive near L.S.U. in Baton Rouge, Louisiana. Wanda Fitzgerald was working at the store and recognized the defendant because he had been in the store two previous times that week. Fitzgerald claimed that the first time she saw the defendant in the store, he stole some items from the store; the second time, he attempted to steal some items. Fitzgerald stated that, because of the previous incidents, when she saw the defendant in the store on the date of the instant incident she asked him to leave because he had been banned from the store.
The defendant refused to leave the store and grabbed a carton of cigarettes from a display. Fitzgerald walked around to the other side of the counter and attempted to take the cigarettes away from the defendant. Fitzgerald stated that she told the defendant to "GET OUT," but the defendant refused. Fitzgerald then reached for the telephone to call the police, but the defendant told her, "I'LL GIVE YOU AIDS" and then stuck her with a needle attached to a syringe containing clear liquid. Fitzgerald stated that she saw the defendant pull the syringe out of his pocket, but she did not move away fast enough to avoid the needle. She stated that the needle broke the skin of her arm and she bled from the wound.
Fitzgerald then grabbed the defendant, shoved him out of the door, and called the police. When the police arrived at the store, she gave them a description of the assailant. Approximately seven hours after the crime occurred, Fitzgerald identified the defendant at the police station as being the assailant.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. He argues that the victim's identification of him was not reliable because the victim identified him as the perpetrator of the crime because of the suggestive one-on-one identification procedure.
A defendant attempting to suppress an identification must prove that the identification was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Daughtery, 563 So.2d 1171, 1173-74 (La.App. 1st Cir.), writ denied, 569 So.2d 980 (La. 1990). Even should the identification be considered suggestive, that factor alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Lewis, 489 So.2d 1055, 1057-58 (La. App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
In reviewing an identification procedure, the court must look at the totality of the circumstances surrounding the identification procedure to determine whether the procedure was so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant was denied due process of law. State v. Marchese, 430 So.2d 1303, 1307 (La.App. 1st Cir.1983). One-onone confrontations between a suspect and witness are not favored by the law, but they are permissible when justified by the overall circumstances. State v. Thomas, 589 So.2d 555, 563 (La.App. 1st Cir.1991). The trial court's determination regarding the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929, 934 (La.1981).
In the instant case, the defendant was brought into the police station on an unrelated charge about six hours after the instant *614 incident. Baton Rouge City Police Officer Jim Norman testified at the hearing on the motion to suppress the identification that he recognized the defendant as the person involved in the instant incident from a description given to him by Fitzgerald. Norman stated that he felt that the defendant fit the description "EXTREMELY WELL." Norman then called Fitzgerald and informed her that a suspect was in custody and asked her to come to the station to look at him. Fitzgerald arrived at the station within twenty minutes, and the officers took her to the defendant's holding cell. Fitzgerald looked in the cell and immediately said, "THAT'S HIM." Norman stated that he did not conduct a physical or photographic lineup and that the defendant was in his street clothes at the time he was identified. Norman felt that Fitzgerald was "100 PERCENT CERTAIN" that the defendant was the assailant.
Wanda Fitzgerald testified at the hearing on the motion to suppress that the defendant had been in the store where she worked two times prior to the instant incident and she had had the opportunity to observe his face during those times. She stated that when the instant incident occurred she recognized the defendant as being the same man that she had seen in the store twice before. Fitzgerald stated that when she arrived at the police station, she informed them she was there to try to make an identification. The officers took her to the defendant's holding cell. She identified the defendant as being the assailant and stated that he was wearing the same clothes he had been wearing when he committed the instant crime. The officers told Fitzgerald that the defendant had been picked up at another store, but they did not tell her why he had been apprehended.
Fitzgerald testified at trial that, after the officers arrived at the store, she gave them a description of the perpetrator and the clothing he was wearing. She also gave a description to another police officer who later came into the store. Fitzgerald went to the police station about 4:00 a.m. She stated that, after she arrived at the police station, she "FILLED OUT A REPORT, WENT DOWN, LOOKED THROUGH THE THREE CELLS THEY HAD AND IDENTIFIED THE GENTLEMAN." She stated that she was "VERY CONFIDENT" that the person she picked out was the same person who had attacked her. The victim also made an in-court identification of the defendant and stated that there was no doubt in her mind that he was the person who attacked her.
Darren Leach, a Baton Rouge City Police Officer, testified that he responded to the instant incident. He spoke with Fitzgerald, and she told him what had happened and gave him a description of the assailant and his clothing. She told him that she had seen him in the store several times before.
Norman testified at trial that he spoke to Fitzgerald after the instant crime occurred. She told him about the incident and gave him a description of the assailant, which included his size, a description of his clothing, his physical features, and his race. Subsequently, he saw the defendant being brought into the police station for an arrest on an unrelated crime which occurred near the site of the instant crime. He thought that he might have been the same person who attacked Fitzgerald, because he matched the description that she had given him. Norman called Fitzgerald and asked her to come to the police station and look at a suspect they had in custody. Fitzgerald arrived at the station approximately twenty minutes after he called her. At the time the victim made the identification, the defendant was wearing the same clothes he was wearing when he was brought into the police station. He was present when Fitzgerald identified the defendant as the person who attacked her.
A review of the overall circumstances of the instant identification procedure indicates it was not unnecessarily suggestive. Even assuming, arguendo, that this identification was suggestive, the defendant has failed to prove a likelihood of misidentification. The factors to be considered in determining the reliability of an identification include the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time elapsed between *615 the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
Applying the Manson analysis to the facts of the instant case, we find this identification of the defendant to be reliable. Fitzgerald viewed the defendant during the commission of the offense and had seen him in the store on two previous occasions. Fitzgerald testified that she saw the defendant's face and specifically remembered him because he caused trouble the first two times he was in the store. Fitzgerald gave police officers a physical and clothing description of the assailant. Norman stated that the defendant fit the description given him by Fitzgerald. Fitzgerald specifically noted that when she identified the defendant as the assailant, he was wearing the same clothes as when he committed the instant crime.
Additionally, upon confronting the defendant, Fitzgerald immediately identified him as the assailant. Norman testified that Fitzgerald was "100 PERCENT CERTAIN" that the defendant was the assailant. Fitzgerald testified that there was not any doubt in her mind that the defendant was the person who committed the instant crime. Finally, only approximately seven hours had elapsed between the crime and Fitzgerald's identification of the defendant at the police station.
Considering the above, we find no error in the trial court's denial of the defendant's motion to suppress the identification. We find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, the defendant contends that the trial court erred in accepting a verdict not supported by sufficient evidence, as the state failed to show that he had the specific intent to kill. He argues that he stood still and it was the victim's actions that caused contact with the needle. He also contends that the state failed to show that the syringe was a dangerous weapon or that the syringe was contaminated with the H.I.V. virus.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
La.R.S. 14:27(A) provides, in pertinent part:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La.R.S. 14:30.1(A) provides, in pertinent part:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of... armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
*616 A conviction of attempted second degree murder requires a finding that the defendant had the specific intent to kill. A finding that the defendant had only the intent to inflict great bodily harm will not support a conviction of attempted second degree murder. State v. Serigny, 610 So.2d 857, 859 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
Wanda Fitzgerald testified that the defendant entered the convenience store where she was working and she recognized the defendant because he had been in the store on two prior occasions earlier that week. When she saw the defendant in the store, she asked him to leave because he had been banned from the store due to earlier incidents. The defendant refused to leave the store and grabbed a carton of cigarettes from a display. Fitzgerald walked around the counter and attempted to take the carton away from the defendant. She told him to get out, but the defendant refused. Fitzgerald then reached for the telephone in order to call the police; and the defendant told her, "I'LL GIVE YOU AIDS" and stuck her with a needle that was attached to a syringe containing clear liquid. The needle broke the skin on her arm, and blood emitted from the wound. Fitzgerald saw the defendant pull the syringe out of his pocket, but she did not move away fast enough to avoid the needle. Fitzgerald then grabbed the defendant, shoved him out of the door, and called the police.
Fitzgerald testified that she had a scar on her arm where she was stabbed with the needle. On cross-examination, Fitzgerald admitted that she did move her arm toward the defendant in order to protect herself before he stabbed her with the needle. Fitzgerald stated that the defendant's statements and actions led her to believe that she could have been infected with the H.I.V. virus. Fitzgerald testified that she was told that the defendant does have the H.I.V. virus.
Darren Leach of the Baton Rouge City Police Department testified that he went to the convenience store after Fitzgerald called the police. Fitzgerald told him about the incident and gave him a description of the assailant. Fitzgerald also told him that the defendant told her that he would stab her with a needle and infect her with AIDS. Leach also observed the wound on Fitzgerald's arm.
Dr. Alfredo Suarez, an expert in the field of pathology, testified that he conducted H.I.V. and Hepatitis B tests on blood samples from Fitzgerald and the defendant that were given to him by the coroner, Dr. Hypolite Landry. Suarez testified that the defendant's H.I.V. test was positive, but the Hepatitis B test was negative. Both of Fitzgerald's tests were negative. Suarez testified that a positive result for the H.I.V. virus would be possible within six months of exposure to the virus. His testing was conducted on June 30, 1993, which was approximately three months after the incident.
Suarez also testified that if someone who was H.I.V. positive used the needle prior to Fitzgerald being stuck with the needle, the "PROBABILITIES ARE HIGH THAT PERSON WOULD BE INFECTED H.I.V. POSITIVE." He stated that there had been sufficient contact to transfer the virus.
Dr. Hypolite Landry, the coroner for East Baton Rouge Parish, testified that he drew blood from the defendant and Fitzgerald and gave the blood samples to Dr. Suarez to test. Landry stated that when he took the blood samples from the defendant he observed extensive "TRACK MARKS" on the defendant's arms. He explained that the term "TRACK MARKS" refers to marks usually seen along the veins of people who have had numerous needles stuck into their veins.
The defendant stabbed Fitzgerald with a needle that was attached to a syringe containing a clear liquid. Prior to stabbing her, he told her that he would "GIVE" her AIDS. We find that the defendant had the specific intent to kill Fitzgerald when he stabbed her with a needle that was possibly contaminated with the H.I.V. virus. Although the syringe was not found and, therefore, not tested, there was a strong possibility that the needle was infected with the virus since the defendant is infected with the H.I.V. virus, he pulled the syringe from his pocket, and the defendant's arms were covered with "TRACK MARKS" which indicated repeated needle usage. Dr. Suarez testified *617 that development of the AIDS disease comes from first being infected with the H.I.V. virus. Suarez stated that the contact between the needle and Fitzgerald was enough to infect her with the H.I.V. virus.
AIDS is a fatal disease for which no cure has been found as of the writing of this opinion. When telling the victim that he would give her AIDS, it could only mean that he had the specific intent to kill her. Stabbing Fitzgerald with the needle after making the statement that he would give her AIDS was an act committed for the purpose of and tending directly toward the accomplishing of killing Fitzgerald. Furthermore, although the defendant claims that the state failed to prove that the needle was a dangerous weapon, La.R.S. 14:27 and 14:30.1 do not require that a defendant use a dangerous weapon in order to be found guilty of attempted second degree murder.
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt that the defendant was guilty of attempted second degree murder. This assignment of error is without merit.
CONVICTION AFFIRMED.
NOTES
[1] In a separate appeal, also rendered this date, the defendant challenged the sentence he received for the instant conviction. See State v. Caine, 94 KA 0120.