680 A.2d 512

**Dwight Ralph SMALLWOOD**

**v.**

**STATE of Maryland.**

**No. 122, Sept. Term, 1995.**

Court of Appeals of Maryland.

Aug. 1, 1996.

98

Julia Doyle Berhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

In this case, we examine the use of circumstantial evidence to infer that a defendant possessed the intent to kill needed for a conviction of attempted murder or assault with intent to murder. We conclude that such an inference is not supportable under the facts of this case.

I

A

On August 29, 1991, Dwight Ralph Smallwood was diagnosed as being infected with the Human Immunodeficiency Virus (HIV). According to medical records from the Prince George's County Detention Center, he had been informed of his HIV-positive status by September 25, 1991. In February 1992, a social worker made Smallwood aware of the necessity of practicing "safe sex" in order to avoid transmitting the virus to his sexual partners, and in July 1993, Smallwood told health care providers at Children's Hospital that he had only one sexual partner and that they always used condoms. Smallwood again tested positive for HIV in February and March of 1994.

On September 26, 1993, Smallwood and an accomplice robbed a woman at gunpoint, and forced her into a grove of trees where each man alternately placed a gun to her head while the other one raped her. On September 28, 1993, Smallwood and an accomplice robbed a second woman at gunpoint and took her to a secluded location, where Smallwood inserted his penis into her with "slight penetration." On September 30, 1993, Smallwood and an accomplice robbed yet a third woman, also at gunpoint, and took her to a local school where she was forced to perform oral sex on Smallwood and was raped by him. In each of these episodes, Smallwood threatened to kill his victims if they did not cooperate or to return and shoot them if they reported his crimes. Smallwood did not wear a condom during any of these criminal episodes.

Based upon his attack on September 28, 1993, Smallwood was charged with, among other crimes, attempted first-degree rape, robbery with a deadly weapon, assault with intent to murder, and reckless endangerment. In separate indictments, Smallwood was also charged with the attempted second-degree murder of each of his three victims. On October 11, 1994, Smallwood pled guilty in the Circuit Court for Prince George's County to attempted first-degree rape and robbery with a deadly weapon.[1] The circuit court (Nichols, J.) also convicted Smallwood of assault with intent to murder and reckless endangerment based upon his September 28, 1993 attack, and convicted Smallwood of all three counts of attempted second-degree murder.

Following his conviction, Smallwood was sentenced to concurrent sentences of life imprisonment for attempted rape, twenty years imprisonment for robbery with a deadly weapon, thirty years imprisonment for assault with intent to murder, and five years imprisonment for reckless endangerment. The circuit court also imposed a concurrent thirty-year sentence for each of the three counts of attempted second-degree murder. The circuit court's judgments were affirmed in part and reversed in part by the Court of Special Appeals. In *Smallwood v. State,* 106 Md.App. 1, 661 A.2d 747 (1995), the intermediate appellate court found that the evidence was sufficient for the trial court to conclude that Smallwood intended to kill his victims and upheld all of his convictions.[2] Upon Smallwood's petition, we granted certiorari to consider

1. In two additional indictments, Smallwood was charged with the rape and robbery of the two women who were attacked on September 26 and September 30. Smallwood pled guilty to attempted first-degree rape and robbery with a deadly weapon in those cases as well, and the judgments entered pursuant to those pleas are not before us on this appeal.

2. The Court of Special Appeals concluded, however, that Smallwood's conviction for assault with intent to murder should merge into the conviction for attempted second-degree murder based upon the same event. Because we find that the evidence was insufficient to convict Smallwood of either of these two crimes, however, the issue of merger has become moot.

whether the trial court could properly conclude that Small-wood possessed the requisite intent to support his convictions of attempted second-degree murder and assault with intent to murder.

## B

Smallwood asserts that the trial court lacked sufficient evidence to support its conclusion that Smallwood intended to kill his three victims. Smallwood argues that the fact that he engaged in unprotected sexual intercourse, even though he knew that he carried HIV, is insufficient to infer an intent to kill. The most that can reasonably be inferred, Smallwood contends, is that he is guilty of recklessly endangering his victims by exposing them to the risk that they would become infected themselves. The State disagrees, arguing that the facts of this case are sufficient to infer an intent to kill. The State likens Smallwood's HIV-positive status to a deadly weapon and argues that engaging in unprotected sex when one is knowingly infected with HIV is equivalent to firing a loaded firearm at that person.[3]

## II

## A

In *Faya v. Almaraz*, 329 Md. 435, 438–440, 620 A.2d 327 (1993), we discussed HIV and the Acquired Immune Deficiency Syndrome (AIDS) in detail. There, we described HIV as a retrovirus that attacks the human immune system, weakening

---

**3.** Smallwood also argues that the legislature preempted the crimes of assault with intent to murder and attempted murder with respect to transmission of HIV when it enacted Maryland Code (1982, 1994 Repl.Vol.) §§ 18–601.1 of the Health General Article, which makes it a criminal offense to knowingly transfer or attempt to transfer HIV to another individual and sets a maximum sentence of three years imprisonment. For this proposition, Smallwood relies on *State v. Gibson*, 254 Md. 399, 254 A.2d 691 (1969). Because we reverse Smallwood's convictions of attempted murder and assault with intent to murder on other grounds, it is unnecessary to address this argument.

it, and ultimately destroying the body's capacity to ward off disease. We also noted that

> [t]he virus may reside latently in the body for periods as long as ten years or more, during which time the infected person will manifest no symptoms of illness and function normally. HIV typically spreads via genital fluids or blood transmitted from one person to another through sexual contact, the sharing of needles in intravenous drug use, blood transfusions, infiltration into wounds, or from mother to child during pregnancy or birth.

*Id.* at 439, 620 A.2d 327. In *Faya,* we also described AIDS and its relationship to HIV:

> AIDS, in turn, is the condition that eventually results from an immune system gravely impaired by HIV. Medical studies have indicated that most people who carry the virus will progress to AIDS. AIDS patients by definition are profoundly immunocompromised; that is, they are prone to any number of diseases and opportunistic infections that a person with a healthy immune system might otherwise resist. AIDS is thus the acute clinical phase of immune dysfunction.... AIDS is invariably fatal.

*Id.* at 439–40, 620 A.2d 327. In this case, we must determine what legal inferences may be drawn when an individual infected with the HIV virus knowingly exposes another to the risk of HIV-infection, and the resulting risk of death by AIDS.

### B

As we have previously stated, "[t]he required intent in the crimes of assault with intent to murder and attempted murder is the specific intent to murder, i.e., the specific intent to kill under circumstances that would not legally justify or excuse the killing or mitigate it to manslaughter." *State v. Earp,* 319 Md. 156, 167, 571 A.2d 1227 (1990). *See also State v. Jenkins,* 307 Md. 501, 515, 515 A.2d 465 (1986) ("[T]he intent element of assault with intent to murder requires proof of a specific intent to kill under circumstances such that if the victim had died, the offense would be murder."); *Franklin v.*

*State,* 319 Md. 116, 126, 571 A.2d 1208 (1990). Smallwood has not argued that his actions were performed under mitigating circumstances or that he was legally justified in attacking the three women. He was properly found guilty of attempted murder and assault with intent to murder only if there was sufficient evidence from which the trier of fact could reasonably have concluded that Smallwood possessed a specific intent to kill at the time he assaulted each of the three women.

To evaluate the sufficiency of the evidence in a non-jury trial, we must review the case on both the law and the evidence. *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831 (1990); *West v. State,* 312 Md. 197, 207, 539 A.2d 231 (1988). In making this inquiry, we will not set aside the trial court's findings of fact unless they are clearly erroneous. *Wilson, supra,* 319 Md. at 535, 573 A.2d 831; Maryland Rule 8–131(c). We must determine "whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged." *Wilson, supra,* 319 Md. at 535–36, 573 A.2d 831.

An intent to kill may be proved by circumstantial evidence. "[S]ince intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence." *Earp, supra,* 319 Md. at 167, 571 A.2d 1227 (quoting *Davis v. State,* 204 Md. 44, 51, 102 A.2d 816 (1954)). Therefore, the trier of fact may infer the existence of the required intent from surrounding circumstances such as "the accused's acts, conduct and words." *State v. Raines,* 326 Md. 582, 591, 606 A.2d 265 (1992); *Earp, supra,* 319 Md. at 167, 571 A.2d 1227. As we have repeatedly stated, "under the proper circumstances, an intent to kill may be inferred from the use of a deadly weapon directed at a vital part of the human body." *Raines, supra,* 326 Md. at 591, 606 A.2d 265; *Jenkins, supra,* 307 Md. at 513, 515 A.2d 465 ("Numerous cases make it clear that evidence showing a design to commit grievous bodily injury, such as using a

deadly weapon directed at a vital part of the body, is sufficient because it gives rise to an evidentiary *inference* of an intent to murder.") (emphasis in original).

In *Raines, supra,* we upheld the use of such an inference. In that case, Raines and a friend were traveling on a highway when the defendant fired a pistol into the driver's side window of a tractor trailer in an adjacent lane. *Raines, supra,* 326 Md. at 586–87, 606 A.2d 265. The shot killed the driver of the tractor trailer, and Raines was convicted of first degree murder. *Id.* The evidence in the case showed that Raines shot at the driver's window of the truck, knowing that the truck driver was immediately behind the window. *Id.* at 592, 606 A.2d 265. We concluded that "Raines's actions in directing the gun at the window, and therefore at the driver's head on the other side of the window, permitted an inference that Raines shot the gun with the intent to kill." *Id.* at 592–93, 606 A.2d 265.

The State argues that our analysis in *Raines* rested upon two elements: (1) Raines knew that his weapon was deadly, and (2) Raines knew that he was firing it at someone's head. The State argues that Smallwood similarly knew that HIV infection ultimately leads to death, and that he knew that he would be exposing his victims to the risk of HIV transmission by engaging in unprotected sex with them. Therefore, the State argues, a permissible inference can be drawn that Smallwood intended to kill each of his three victims. The State's analysis, however, ignores several factors.

### C

First, we must consider the magnitude of the risk to which the victim is knowingly exposed. The inference drawn in *Raines, supra,* rests upon the rule that "[i]t is permissible to infer that 'one intends the natural and probable consequences of his act.' " *Ford v. State,* 330 Md. 682, 704, 625 A.2d 984 (1993) (quoting *Davis v. State,* 204 Md. 44, 51, 102 A.2d 816 (1954)). Before an intent to kill may be inferred based solely upon the defendant's exposure of a victim to a

risk of death, it must be shown that the victim's death would have been a natural and probable result of the defendant's conduct. It is for this reason that a trier of fact may infer that a defendant possessed an intent to kill when firing a *deadly* weapon at a *vital* part of the human body. *Raines, supra,* 326 Md. at 591, 606 A.2d 265; *Jenkins, supra,* 307 Md. at 513, 515 A.2d 465. When a deadly weapon has been fired at a vital part of a victim's body, the risk of killing the victim is so high that it becomes reasonable to assume that the defendant intended the victim to die as a natural and probable consequence of the defendant's actions.

Death by AIDS is clearly one *natural* possible consequence of exposing someone to a risk of HIV infection, even on a single occasion. It is less clear that death by AIDS from that single exposure is a sufficiently *probable* result to provide the sole support for an inference that the person causing the exposure intended to kill the person who was exposed. While the risk to which Smallwood exposed his victims when he forced them to engage in unprotected sexual activity must not be minimized, the State has presented no evidence from which it can reasonably be concluded that death by AIDS is a probable result of Smallwood's actions to the same extent that death is the probable result of firing a deadly weapon at a vital part of someone's body. Without such evidence, it cannot fairly be concluded that death by AIDS was sufficiently probable to support an inference that Smallwood intended to kill his victims in the absence of other evidence indicative of an intent to kill.

## D

In this case, we find no additional evidence from which to infer an intent to kill. Smallwood's actions are wholly explained by an intent to commit rape and armed robbery, the crimes for which he has already pled guilty. For this reason, his actions fail to provide evidence that he also had an intent to kill. As one commentator noted, in discussing a criminal case involving similar circumstances, "[b]ecause virus transmission occurs simultaneously with the act of rape,

that act alone would not provide evidence of intent to transmit the virus. Some additional evidence, such as an explicit statement, would be necessary to demonstrate the actor's specific intent." Note, *Criminal Liability for Transmission of AIDS: Some Evidentiary Problems,* 10 Crim. Just. J. 69, 78 (1994). Smallwood's knowledge of his HIV-infected status provides the only evidence in this case supporting a conclusion that he intended anything beyond the rapes and robberies for which he has been convicted.

The cases cited by the State demonstrate the sort of additional evidence needed to support an inference that Smallwood intended to kill his victims. The defendants in these cases have either made explicit statements demonstrating an intent to infect their victims or have taken specific actions demonstrating such an intent and tending to exclude other possible intents. In *State v. Hinkhouse,* 139 Or.App. 446, 912 P.2d 921 (1996), for example, the defendant engaged in unprotected sex with a number of women while knowing that he was HIV positive. The defendant had also actively concealed his HIV-positive status from these women, had lied to several of them by stating that he was not HIV-positive, and had refused the women's requests that he wear condoms. *Id.* 912 P.2d at 923–24. There was also evidence that he had told at least one of his sexual partners that "if he were [HIV-]positive, he would spread the virus to other people." *Id.* at 924. The Oregon Court of Appeals found this evidence to be sufficient to demonstrate an intent to kill, and upheld the defendant's convictions for attempted murder.

In *State v. Caine,* 652 So.2d 611 (La.App.), *cert. denied,* 661 So.2d 1358 (La.1995), a conviction for attempted second degree murder was upheld where the defendant had jabbed a used syringe into a victim's arm while shouting "I'll give you AIDS." *Id.* at 616. The defendant in *Weeks v. State,* 834 S.W.2d 559 (Tex.App.1992), made similar statements, and was convicted of attempted murder after he spat on a prison guard. In that case, the defendant knew that he was HIV-positive, and the appellate court found that "the record reflects that [Weeks] thought he could kill the guard by spitting

his HIV-infected saliva at him." *Id.* at 562. There was also evidence that at the time of the spitting incident, Weeks had stated that he was "going to take someone with him when he went,' that he was 'medical now,' and that he was 'HIV–4.' "

The evidence in *State v. Haines*, 545 N.E.2d 834 (Ind.App. 1989), contained both statements by the defendant demonstrating intent and actions solely explainable as attempts to spread HIV. There, the defendant's convictions for attempted murder were upheld where the defendant slashed his wrists and sprayed blood from them on a police officer and two paramedics, splashing blood in their faces and eyes. *Id.* at 835. Haines attempted to scratch and bite them and attempted to force blood-soaked objects into their faces. During this altercation, the defendant told the officer that he should be left to die because he had AIDS, that he wanted to "give it to him," and that he would "use his wounds" to spray the officer with blood. *Id.* Haines also "repeatedly yelled that he had AIDS, that he could not deal with it and that he was going to make [the officer] deal with it." *Id.*

*Scroggins v. State*, 198 Ga.App. 29, 401 S.E.2d 13, 15 (1990), presents a similar scenario, where the defendant made noises with his mouth as if bringing up spittle and then bit a police officer hard enough to break the skin. Immediately after this incident he informed a nurse that he was HIV-positive and laughed when the police officer asked him if he had AIDS. *Id.* The Georgia Court of Appeals found that evidence showing that the defendant "sucked up excess sputum" before biting the officer was "evidence of a deliberate, thinking act" and that in conjunction with the defendant's laughter when asked about AIDS, it provided sufficient evidence of intent to support Scroggins's conviction for assault with intent to kill.[4] *Id.*, 401 S.E.2d at 18.

---

**4.** The last two cases cited by the state involved inferences that are markedly different from the one at issue here. In *Commonwealth v. Brown*, 413 Pa.Super. 421, 605 A.2d 429 (1992), the defendant was convicted of aggravated assault after throwing a cup of his fecal matter into the face and mouth of a prison guard. *Id.* 605 A.2d at 431. The defendant had been diagnosed as carrying HIV and Hepatitis B and

In contrast with these cases, the State in this case would allow the trier of fact to infer an intent to kill based solely upon the fact that Smallwood exposed his victims to the risk that they might contract HIV. Without evidence showing that such a result is sufficiently probable to support this inference, we conclude that Smallwood's convictions for attempted murder and assault with intent to murder must be reversed.

*JUDGMENTS FOR ATTEMPTED MURDER IN THE SECOND DEGREE AND ASSAULT WITH INTENT TO MURDER REVERSED; COSTS TO BE PAID BY THE RESPONDENT.*

---

had been informed by them of the means by which these two viruses may be transmitted. *Id.* The inmate testified that he intended to punish the prison guard for "messing with [his] mail." *Id.* The Pennsylvania Superior Court found this evidence to be sufficient to demonstrate an intent to cause serious bodily injury. *Id.* Although this issue was not discussed by the Pennsylvania court, *Brown* also dealt with the possible transmission of two distinct viruses, Hepatitis B and HIV, and therefore with a correspondingly higher probability that the defendant's actions would cause the victim to become infected with at least one of them. An increased probability of infection would strengthen the inferences that could be drawn from the defendant's knowingly exposing his victim to the risk of infection.

The state also cites *State v. Stark*, 66 Wash.App. 423, 832 P.2d 109 (1992). There, Stark was convicted of second degree assault for engaging in sex without a condom after being informed that he was HIV-positive, and after a cease and desist order had been obtained ordering him not to engage in unprotected sexual activity. In that case, however, the issue of intent was whether the defendant had intentionally exposed his sexual partners to HIV, not whether Stark intended to kill them.

We have no trouble concluding that Smallwood intentionally exposed his victims to the risk of HIV-infection. The problem before us, however, is whether knowingly exposing someone to a risk of HIV-infection is by itself sufficient to infer that Smallwood possessed an intent to kill. In this inquiry, *Stark* is not helpful.