[Nos. 14261-9-II; 14930-3-II. Division Two. July 13, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CALVIN EDWARD STARK, *Appellant.*

424

*John F. Hayden, Public Defender,* for appellant.

*David H. Bruneau, Prosecuting Attorney,* for respondent.

PETRICH, C.J. — This is a consolidated appeal from a jury trial on one count and a bench trial on two counts of second degree assault. At both trials, Calvin Stark was found guilty of intentionally exposing his sexual partners to the human immunodeficiency virus (HIV), RCW 9A.36.021-(1)(e). After the jury trial for which he was found guilty of one count, referred to as count 1, the trial court imposed an exceptional sentence. After the bench trial for which he was found guilty of two additional counts, referred to as counts 2 and 3, the trial court imposed concurrent standard range sentences. Stark contends that in both trials the State improperly used confidential information and presented insufficient evidence of intent to expose his sexual partners to HIV. He also challenges the constitutionality of the second degree assault statute as vague and contends that the exceptional sentence the court imposed for count 1 was unjustified. We affirm the convictions, but remand for resentencing on count 1.

On March 25, 1988, Calvin Stark tested positive for HIV, which was confirmed by further tests on June 25 and on June 30, 1988. From June 30, 1988, to October 3, 1989, the staff of the Clallam County Health Department had five meetings with Stark during which Stark went through extensive counseling about his infection. He was taught

about "safe sex", the risk of spreading the infection, and the necessity of informing his partners before engaging in sexual activity with them. On October 3, 1989, Dr. Locke, the Clallam County Health Officer, after learning that Stark had disregarded this advice and was engaging in unprotected sexual activity, issued a cease and desist order as authorized by RCW 70.24.024(3)(b).

Stark did not cease and desist, and, consequently, on March 1, 1990, Dr. Locke went to the county prosecutor's office intending to seek the prosecutor's assistance, pursuant to RCW 70.24.034(1), in obtaining judicial enforcement of the cease and desist order. The prosecutor instead had Dr. Locke complete a police report. The State then charged Stark with three counts of assault in the second degree under RCW 9A.36.021(1)(e).[1] Each count involved a different victim:

Count 1: The victim and Stark engaged in sexual intercourse on October 27 and October 29, 1989. On both occasions, Stark withdrew his penis from the victim prior to ejaculation. The victim, who could not become pregnant because she had previously had her fallopian tubes tied, asked Stark on the second occasion why he withdrew. He then told her that he was HIV positive.

Count 2: The victim and Stark had sexual relations on at least six occasions between October 1989, and February 1990. Stark wore a condom on two or three occasions, but on the others, he ejaculated outside of her body. On each occasion, they had vaginal intercourse. On one occasion Stark tried to force her to have anal intercourse. They also engaged in oral sex. When she told Stark that she had heard rumors that he was HIV positive, he admitted that he was and then gave the victim an AZT pill "to slow down the process of the AIDS."

Count 3: The victim and Stark had sexual relations throughout their brief relationship. It was "almost nonstop

---

[1] RCW 9A.36.021(1)(e) provides: "(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . (e) With intent to inflict bodily harm, exposes or transmits human immunodeficiency virus as defined in chapter 70.24 RCW; . . ."

with him", "almost every night" during August 1989. Stark never wore a condom and never informed the victim he was HIV positive. When pressed, Stark denied rumors about his HIV status. The victim broke off the relationship because of Stark's drinking, after which Stark told her that he carried HIV and explained that if he had told her, she would not have had anything to do with him.

Before the trials, Stark moved to suppress Dr. Locke's testimony as well as all information the prosecutor learned from Dr. Locke, and to dismiss the charges. The trial court denied the motions. At the jury trial, the victim in count 1 testified to her contacts with Stark and the jury received Dr. Locke's deposition testimony regarding the health department's contacts with Stark. Stark did not testify. In the bench trial, Dr. Locke testified. There the State also presented the testimony of one of Stark's neighborhood friends. She testified that one night Stark came to her apartment after drinking and told her and her daughter that he was HIV positive. When she asked him if he knew that he had to protect himself and everybody else, he replied, "I don't care. If I'm going to die, everybody's going to die."

The jury found Stark guilty on count 1. A second trial judge found Stark guilty of the second and third counts at a bench trial. On count 1, Stark was given an exceptional sentence of 120 months based on his future danger to the community. The standard range for that offense was 13 to 17 months. On counts 2 and 3, Stark was given the low end of the standard range, 43 months each, to be served concurrently, but consecutively to count 1.

I

CONFIDENTIALITY

Stark first contends that this court should dismiss his convictions because the prosecutor's use of confidential information regarding Stark's HIV status made it public. When Stark requested the HIV testing, he was informed that the test results would be confidential. Furthermore,

RCW 70.24.105(1) provides, with certain exceptions, that no person may disclose or be compelled to disclose the identity of any person who has requested an HIV test. RCW 70.24.105(2) similarly prevents the disclosure of the identity of a person upon whom an HIV test is performed or the disclosure of the results of that test. The statute then lists several persons who "may receive such information". Law enforcement officers are not included in this list. Stark, therefore, contends that Dr. Locke violated the statute by informing the prosecutor of Stark's identity and the HIV test result.

The trial court rejected this argument because RCW 70-.24.034(2) specifically refers to the prosecuting attorney. RCW 70.24.024 allows public health officers to counsel persons with sexually transmitted diseases and, if necessary, order them to cease and desist from conduct that endangers the health of others. If the person does not comply with the order, the public health officer "may request a warrant be issued by the superior court" to ensure the person's presence at a hearing at which the officer has the burden of proving that grounds exist for issuing the order. RCW 70.24-.024(4)(a). If the procedures set forth in RCW 70.24.024 have been exhausted and the public health officer has reason to believe the person is continuing to engage in behavior dangerous to the public health, the officer may bring an action in superior court to detain the person in a designated facility for a period of counseling and education not to exceed 90 days. RCW 70.24.034(1). If an action is filed under RCW 70.24.034(1), the superior court, "upon the petition of the prosecuting attorney, shall issue other appropriate court orders including, but not limited to, an order to take the person into custody . . .". RCW 70.24.034(2).

■■ Obviously, a prosecutor cannot file such a petition without information regarding the identity and conduct of persons who have sexually transmitted diseases. Although prosecuting attorneys are not mentioned in the section specifically dealing with confidentiality (RCW 70.24.105), the

statute as a whole makes clear that prosecutors may, at some point, have access to otherwise confidential information held by public health officers. We read statutes as a whole in construing their meaning, not piecemeal. *State v. Parker*, 97 Wn.2d 737, 741, 649 P.2d 637 (1982). Dr. Locke understood the statute in this manner and spoke with the prosecutor in contemplation of filing a civil action under RCW 70.24.034. The doctor did not violate Stark's statutory right to confidentiality by discussing the case with the prosecutor.

Stark complains, however, that the prosecutor did not use the information to file a civil action under RCW 70.24.034, but, rather, to file criminal charges under RCW 9A.36-.021(1)(e). The difference is significant in terms of further dissemination of confidential information. Criminal trials are public unless there is a compelling reason to close them, *see Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982), whereas the hearing in a civil action under RCW 70.24 is "closed and confidential" unless the defendant requests otherwise. RCW 70.24.034(5).[2]

■■ The Legislature sought to protect the confidentiality of those infected with HIV, which implicates sensitive

---

[2]Stark suggests a number of ways that the State could preserve the confidentiality of defendants: (1) assist the health department only if the information remain anonymous; (2) obtain a special prosecutor to handle the civil action, thereby avoiding conflicts; and (3) agree to assist the health department but, as a matter of policy, refuse to pursue criminal charges based upon such information. We need not address these alternatives as we view the matter as one of prosecutorial discretion. For a novel approach at protecting a defendant's confidentiality *see People v. Anonymous*, ___ Misc. 2d ___, 582 N.Y.S.2d 350 (Cy. Ct. 1992). There the district attorney sought an order to compel the defendant to submit to and reveal the results of an HIV test. The court held the prosecution to a showing by clear and convincing evidence that there was a compelling need for the disclosure of information for adjudication of a criminal proceeding and a clear and immediate danger to individuals' health who may unknowingly be at risk as a result of contact with the defendant. However, the court ordered that the record be sealed, that the defendant's name be redacted to delete any references to his identity, and only be made available to persons with a need to know. The court also ordered that all future proceedings be in camera and titled *People v. Anonymous*. We make no comment on the constitutionality of such orders.

privacy issues, by designing RCW 70.24 with the intent of affording patients privacy, confidentiality, and dignity. Its purpose was to provide "patients with a secure knowledge that information they provide will remain private and confidential." RCW 70.24.015. However, the Legislature also sought to protect the public from those who are infected that act irresponsibly and endanger others. RCW 70.24.015. As part of the same legislation, the Legislature criminalized the intentional exposure of HIV. Laws of 1988, ch. 206, § 916; RCW 9A.36.021. Dr. Locke testified that the State Board of Health determined that vaginal intercourse without the use of a condom when one is HIV positive is "a behavior presenting imminent danger to the public health, which is the most serious classification for risk of infectious disease." We see no evidence that the Legislature sought to restrict the ability of the prosecutor to make those who engage in criminal behavior accountable for their behavior. Once Stark crossed the line and began to intentionally place other persons' lives at risk, he stood the risk of criminal prosecution. As the Legislature found,

> sexually transmitted diseases constitute a serious and sometimes fatal threat to the public and individual health and welfare of the people of the state. . . . the incidence of sexually transmitted diseases is rising at an alarming rate and that these diseases result in significant social, health, and economic costs, including infant and maternal mortality, temporary and lifelong disability, and premature death.

RCW 70.24.015.

While civil remedies also existed in the present case, prosecutors have an obligation to enforce criminal laws. RCW 36.27.020. According to the trial court finding and the jury verdicts, Stark committed a felony by intentionally exposing his victims to HIV. While providing a potential civil remedy, nothing in RCW 70.24 precludes the prosecutor from choosing to file criminal charges rather than first exhausting the available civil remedies. The exercise of prosecutorial discretion on whether to criminally charge someone involves a number of considerations, not the least of which is the public interest. *State v. Judge*, 100 Wn.2d

706, 713, 675 P.2d 219 (1984). The trial courts did not err in refusing to suppress the information obtained from the health department or in refusing to allow Dr. Locke's deposition and testimony.

## II
### SUFFICIENCY OF THE EVIDENCE

■ Stark also contends that his convictions should be dismissed because the State failed to present sufficient evidence of an intent to inflict bodily harm. In determining whether sufficient evidence supports a conviction, "[t]he standard of review is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). Under this standard, we resolve all inferences in favor of the State. *State v. Smith*, 104 Wn.2d 497, 507, 707 P.2d 1306 (1985).

Stark contends that there is insufficient evidence to prove that he "exposed" anyone to HIV or that he acted with intent to inflict bodily harm. Since Stark is undisputedly HIV positive, he necessarily exposed his sexual partners to the virus by engaging in unprotected sexual intercourse. The testimony of the three victims supports this conclusion.

■ The testimony supporting the element of intent to inflict bodily harm includes Dr. Locke's statements detailing his counseling sessions with Stark. With regard to the first victim, we know that Stark knew he was HIV positive, that he had been counseled to use "safe sex" methods, and that it had been explained to Stark that coitus interruptus will not prevent the spread of the virus. While there is evidence to support Stark's position, all the evidence viewed in a light most favorable to the State supports a finding of intent beyond a reasonable doubt. The existence of noncriminal explanations does not preclude a finding that a defendant intended to harm his sexual partners. *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975). With regard to the later victims, we have, in addition to this same evidence, Stark's

neighbor's testimony that Stark, when confronted about his sexual practices, said, "I don't care. If I'm going to die, everybody's going to die." We also have the testimony of the victim in count 2 that Stark attempted to have anal intercourse with her and did have oral sex, both methods the counselors told Stark he needed to avoid. *See also Commonwealth v. Brown*, 413 Pa. Super. 421, 605 A.2d 429 (1992) (Defendant threw his feces into face of prison guard. Court found that there was sufficient evidence to support finding of intent to inflict bodily harm when defendant had been counseled by both a physician and a nurse about being tested HIV positive and that he could transmit the virus through his bodily fluids.); *State v. Haines*, 545 N.E.2d 834 (Ind. Ct. App. 1989) (sufficient evidence to convict of attempted murder when defendant, knowing he was HIV positive, spit, bit, scratched, and threw blood at officer); *Scroggins v. State*, 198 Ga. App. 29, 401 S.E.2d 13 (1990) (sufficient evidence to convict of aggravated assault with intent to murder when defendant, knowing he was HIV positive, sucked up excess sputum, bit an officer, and laughed about it later); *Zule v. State*, 802 S.W.2d 28 (Tex. Ct. App. 1990) (sufficient evidence that defendant transmitted virus to victim).

## III
### Unconstitutional Vagueness

■ ■ Stark contends that this court should dismiss his convictions because RCW 9A.36.021(1)(e) is unconstitutionally vague. He contends that the statute does not define the prohibited conduct with sufficient specificity to put an ordinary citizen on notice as to what conduct he or she must avoid. Statutes that are susceptible to arbitrary and discriminatory enforcement are invalid. *State v. Smith*, 111 Wn.2d 1, 5, 759 P.2d 372 (1988). Criminal statutes must contain ascertainable standards for consistent adjudication. *Seattle v. Shepherd*, 93 Wn.2d 861, 865, 613 P.2d 1158 (1980).

To succeed on his claim, Stark must prove beyond a reasonable doubt that the statute is unconstitutionally vague, thereby defeating the presumption of constitutionality. *State v. Aver*, 109 Wn.2d 303, 306-07, 745 P.2d 479 (1987). This same burden applies on appeal when the review is de novo. *State v. Campbell*, 103 Wn.2d 1, 26, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). If persons of common intelligence must necessarily guess at a statute's meaning and differ as to its application, the statute is unconstitutionally vague. *O'Day v. King Cy.*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988).

When a defendant asserts that a statute is unconstitutionally vague on its face, as opposed to vague as applied, the reviewing court must still look to the facts of the case before looking for hypothetically constitutional situations. *State v. Worrell*, 111 Wn.2d 537, 541, 761 P.2d 56 (1988). If the defendant's conduct fits within the proscribed conduct of the statute, the defendant cannot assert other hypothetical applications of the law. *Worrell*, at 541.

"[I]mpossible standards of specificity are not required." *Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988) (citing *Kolender v. Lawson*, 461 U.S. 352, 361, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983)). "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Eze*, at 27. "'[I]f men of ordinary intelligence can understand a penal statute, *notwithstanding some possible areas of disagreement*, it is not wanting in certainty.'" *Eze*, at 27 (quoting *State v. Maciolek*, 101 Wn.2d 259, 265, 676 P.2d 996 (1984) (quoting *Spokane v. Vaux*, 83 Wn.2d 126, 129, 516 P.2d 209 (1973))).

■ ■ Where as here, the statute requires proof of specific criminal intent, the remaining terms are less vague or indefinite than they might otherwise be considered. *Seattle v. Webster*, 115 Wn.2d 635, 644, 802 P.2d 1333 (1990), *cert. denied*, ___ U.S. ___, 114 L. Ed. 2d 85, 111 S. Ct. 1690 (1991). Moreover, because the assault statute does not implicate any

First Amendment rights, Stark cannot claim the statute is facially vague; he may only argue that it is vague as applied to him. *Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7, 71 L. Ed. 2d 362, 102 S. Ct. 1186 (1982). It is therefore irrelevant whether the statute gives adequate notice that the hypothetical conduct he describes is prohibited.

■ Stark complains that the statute "nowhere defines the term expose, nor does it state that it is a crime to transmit the HIV virus to another human being." No reasonably intelligent person would think the statute criminalizes the transmission of HIV to nonhumans. Stark's argument regarding the term "expose" is also unpersuasive. Any reasonably intelligent person would understand from reading the statute that the term refers to engaging in conduct that can cause another person to become infected with the virus. Stark engaged in unprotected sexual intercourse with other human beings after being counseled on several occasions that such conduct would expose his partners to the virus he carries. He was not forced to guess at what conduct was criminal.

## IV
### EXCEPTIONAL SENTENCE

Stark also contends that the trial court erred in imposing an exceptional sentence based solely on future dangerousness.

RCW 9.94A.210(4) provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

The Supreme Court explained this provision:

> [T]he reasons set forth by the trial court for imposing the exceptional sentence shall be upheld by the reviewing court

unless they are clearly erroneous. . . . Under the second part of subsection (a), however, the reviewing court must independently decide as a matter of law whether the trial court's reasons justify the sentence.

*State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990).

 Under the second part of subsection (a), "[t]he reasons must be 'substantial and compelling', RCW 9.94A-.120(2), and must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). Once substantial and compelling factors exist to support an exceptional sentence, the length of the sentence is left to the discretion of the sentencing court. *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986); RCW 9.94A.210(4).

The trial court reasoned:

2. By his behavior the defendant has not demonstrated that he will do anything to protect others. He has and he will continue to be a danger to those persons with whom he comes into contact. His past behavior as outlined in testimony and exhibits indicates that he presents a grave risk to the community.

3. The purpose of the Sentencing Reform Act include imposing sufficient punishment upon the offender and protecting the public. Given the history of this defendant and corroborating evidence, the Court concludes that the defendant presents extreme danger to the community. It is the Court's conclusion that the threat posed to the community by this defendant is greater than that which could be ameliorated by incarceration for a period of time limited to the standard range (13 to 17 months).

 While future dangerousness is an appropriate factor when there is a demonstrated history of similar criminal acts coupled with a finding of nonamenability to treatment, *State v. Pryor*, 115 Wn.2d at 453, the Washington Supreme Court has recently held that future dangerousness is an inappropriate factor for justifying an exceptional sentence in nonsexual offense cases.[3] *State v. Barnes*, 117 Wn.2d 701,

---

[3]The trial court did not make a finding of similar criminal acts or of nonamenability to treatment. As to the first, such a finding would violate the real facts doctrine as the only evidence of similar criminal conduct at the time of the sentencing on the first charge was the behavior charged in counts 2 and 3.

711-12, 818 P.2d 1088 (1991). As the State did not convict Stark of a sexual offense, it cannot use a finding of future dangerousness to justify an exceptional sentence.

Furthermore, the trial court abused its discretion in imposing a 10-year sentence. In order to commit this crime, a person has to know he or she is HIV positive, know how the virus is transmitted, and engage in activity with intent to cause harm. Although such conduct is by nature very serious and reprehensible, the Legislature fixed the same relatively light standard range term that applies in all other second degree assault cases. Significantly, since "transmitting" the virus is an alternative means of committing the offense, the standard range remains the same even if the victim acquires the virus.

Here, there was no evidence that as of the date of the trial any of the victims had contracted the virus, and Stark's conduct does not seem to be the "worst possible" example of this offense. The trial court, therefore, abused its discretion in imposing a 10-year term. *Cf. State v. Farmer*, 116 Wn.2d 414, 431-32, 805 P.2d 200, 812 P.2d 858 (1991) (upholding exceptional 7½-year sentence based on finding of deliberate cruelty where defendant knowingly exposed his two minor victims to HIV).

"The standard to be used when determining whether a case should be remanded for resentencing is if the appellate court deems the invalidated facts to be facts upon which the trial court placed considerable weight in determining the sentence, then remand is necessary." *State v. Roberts*, 55 Wn. App. 573, 587, 779 P.2d 732 (citing *State v. Fisher*, 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987)), *review denied*, 113 Wn.2d 1026 (1989). As future dangerousness was the only basis for the exceptional sentence imposed, this court must remand for resentencing on count 1 within the standard range.

## V
### Pro Se Issues

Stark raises a number of issues in his pro se brief. First, he contends that the State failed to properly charge him

with assault because specific statutory prohibitions preempt general ones. More specifically, he contends that RCW 70.24 preempted the more general provisions of RCW 9A.36-.021(1)(e).

Stark misapplies the rule regarding general and specific statutes. While provisions of a more recent specific statute prevail in a conflict with a more general predecessor, this rule applies only if the statutes deal with the same subject matter and the conflict cannot be harmonized. *State v. Becker*, 59 Wn. App. 848, 852, 801 P.2d 1015 (1990). Further, he contends that there were no victims in the present case because there were no injuries. We find this contention meritless. Clearly, Stark traumatized the women he exposed to HIV by his behavior.

Second, Stark contends that the trial court erred in considering evidence that originated in strict confidence because it was protected by the psychologist-patient privilege. As noted above, Dr. Locke did not violate the privilege as he properly sought enforcement of the cease and desist order from the prosecutor. The physician-patient privilege is applicable "only 'so far as practicable' in criminal cases." *State v. Mark*, 23 Wn. App. 392, 396, 597 P.2d 406 (1979). It is statutory, not of constitutional magnitude. *State v. Boehme*, 71 Wn.2d 621, 634, 430 P.2d 527 (1967), *cert. denied*, 390 U.S. 1013 (1968); RCW 5.60.060(4). Application of the privilege requires a balancing of the benefits of the privilege against the public interest of full revelation of the facts. *Petersen v. State*, 100 Wn.2d 421, 429, 671 P.2d 230 (1983).

Last, Stark contends that the State committed an ex post facto infirmity by using confidential information to charge him with assault. Stark concedes that if the prosecutor had properly followed the statutory guidelines there would not be an ex post facto infirmity. He contends, however, that the prosecutor's use of confidential information in order to secure a conviction created such an infirmity. Stark appears to be arguing that because the Legislature gave him a vested right in the confidentiality of his HIV status, the

prosecutor's use of that information to charge him criminally extinguished that right, thereby creating an ex post facto deprivation. As noted above, the prosecutor did not exceed his authority in relying on Stark's otherwise confidential information regarding his HIV status.

We affirm the convictions, but remand for resentencing on count 1.

ALEXANDER and SEINFELD, JJ., concur.

Reconsideration denied September 15, 1992.