**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MELVIN ADIEL AMAYA, AKA Melvin Adiel Amaya-Cartagena, *Petitioner*, | No. 18-70060 |
| | Agency No. A077-152-130 |
| v. | |
| MERRICK B. GARLAND, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 13, 2021
Pasadena, California

Filed October 7, 2021

Before: Jay S. Bybee and Daniel A. Bress, Circuit Judges,
and Kathleen Cardone,* District Judge.

Opinion by Judge Bybee

---

* The Honorable Kathleen Cardone, United States District Judge for
the Western District of Texas, sitting by designation.

## SUMMARY[**]

### Immigration

Denying in part and dismissing in part Melvin Amaya's petition for review of a decision of the Board of Immigration Appeals, the panel held that: (1) first-degree assault under Washington Revised Code § 9A.36.011 is categorically a crime of violence aggravated felony; (2) the court lacked jurisdiction to consider Amaya's unexhausted due process claim; and (3) substantial evidence supported the denial of relief under the Convention Against Torture (CAT).

The Immigration and Nationality Act defines "aggravated felony" to include "a crime of violence," as defined in 18 U.S.C. § 16, for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F). Under § 16(a), a "crime of violence" is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

Amaya argued that § 9A.36.011 is too broad, and therefore not a categorical match for § 16(a) because § 9A.36.011(b) punishes someone who administers poison or exposes another person to the human immunodeficiency virus. However, the panel concluded that § 9A.36.011(b) satisfies the requirements of § 16(a). First, § 9A.36.011 requires "intent to inflict great bodily harm," which Washington courts have said is specific intent. The panel concluded that this easily satisfies the "use of physical force"

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

in § 16(a), explaining that the Supreme Court has reasoned that "use" equates to "active employment," and thus requires a higher degree of intent than negligent or accidental conduct. Second, the panel explained that this court has repeatedly recognized that "indirect" force, like exposure to poison or other harmful substances, satisfies § 16(a)'s force requirement. Further, the panel saw no realistic probability that the state would apply § 9A.36.011(b) to conduct outside the scope of § 16(a).

Amaya raised two arguments that Washington's accomplice liability statute, Wash. Rev. Code § 9A.08.020(a)(i)–(ii), rendered his conviction categorically overbroad. First, Amaya argued that, because Washington requires lessor proof of accomplice liability (general intent) than is required for a crime of violence (specific intent), and because, under *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), there is no longer any difference between the culpability of principals and accomplices (present at the scene or accessories before the fact), therefore, a conviction under Washington law necessarily fails to qualify as a categorical crime of violence. The panel rejected this argument, explaining that one of Amaya's premises—that § 16(a) requires specific intent—was false because this court has squarely held that "knowledge" as defined in Washington satisfies § 16(a).

Second, Amaya argued that, because principals and the accomplices are equally culpable, and thus, when conducting a categorical inquiry, the criminal activities of aiders and abettors must themselves fall within the scope of the generic federal crime, but under Washington law accomplices may be subject to a diminished standard of proof due to the different mens rea required (specific intent for § 9A.36.011, but only

general intent for Washington accomplice liability), therefore, accomplice liability in Washington is broader than generic accomplice liability. The panel observed that Amaya's proposition would be a forceful argument if his analysis governed every application of the categorical approach to Washington crimes. However, the panel concluded that it did not.

In so concluding, the panel discussed *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), in which the court concluded that a state offense was not a drug trafficking aggravated felony because the mens rea of Washington accomplice liability appeared broader than its federal analogue. The panel explained that *Valdivia-Flores* may well have meant that no Washington state conviction can serve as an aggravated felony at all. However, in *United States v. Door*, 917 F.3d 1146 (9th Cir. 2019), the court rejected that proposition, explaining that in *Valdivia-Flores*, the categorical analysis involved comparing the elements of the Washington crime with an *enumerated* generic federal offense; in contrast, in *Door*, the categorical analysis involved measuring the Washington statute against a *class* of offenses defined by "the use, attempted use, or threatened use of physical force"—a phrase known as the "elements or force clause" of §16(a). Because Door's conviction necessarily entailed the threatened use of violent physical force, the court concluded that it qualified as a crime of violence pursuant to the force clause, and the inquiry ended there.

The panel concluded that *Door* governed this case. As in *Door*, the analysis here concerned the force inquiry, not a comparison to an enumerated offense. Thus, *Valdivia-Flore*s did not require comparing the mens rea of Washington and federal accomplice liability. Rather, it was sufficient that

Washington's first-degree assault statute requires proof of assault "with intent to inflict great bodily harm." Accordingly, the panel held that § 9A.36.011 is categorically a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F), and thus, Amaya was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an "aggravated felony."

The panel concluded that it lacked jurisdiction to reach Amaya's due process claim of immigration judge (IJ) bias because Amaya had failed to exhaust it before the BIA. The panel explained that neither his notice of appeal nor his attachment made a clear, non-conclusory argument in support of his claim.

Finally, the panel concluded that the agency did not err in denying Amaya's application for deferral of removal under CAT, observing that the IJ laid out the correct legal standard, considered Amaya's concern that he would be harmed by the Salvadoran government, and found that Amaya was never harmed in the past by the Salvadoran government. The panel explained that the IJ considered the totality of the record evidence, including the country conditions reports. Given the lack of evidence supporting a claim of torture by the government, and the evidence demonstrating that El Salvador does not acquiesce to gang violence, the panel concluded that substantial evidence supported the denial of CAT relief.

**COUNSEL**

Andrew M. Knapp (argued), Supervising Attorney; John Kiang (argued), James M. Glassman (argued), Abraham E. Bran, Brendan E. Nafarrate, and Elizabeth A. Siruno, Certified Law Students; Southwestern School of Law, Los Angeles, California; for Petitioner.

Rebecca Hoffberg Phillips and Katherine A. Smith, Trial Attorneys; Margaret Kuehne Taylor, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BYBEE, Circuit Judge:

Melvin Amaya shot his drug dealer five times and was convicted in Washington of first-degree assault. After Amaya served his sentence, the Department of Homeland Security (DHS) charged him with being removable for having been convicted of an "aggravated felony," as defined in the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii). Amaya contested his removability on the grounds that his conviction was not categorically an "aggravated felony." In the alternative, he sought asylum, withholding of removal, or relief under the Convention Against Torture (CAT).

The Board of Immigration Appeals (BIA) held that Amaya was removable and that he was not entitled to asylum, withholding of removal, or relief under CAT. Amaya

petitions for review of that decision.  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition in part and dismiss in part.

## I. BACKGROUND

Melvin Amaya is a 40-year-old native citizen of El Salvador, who entered the United States in 1994 and received Lawful Permanent Resident (LPR) status in 1998 at the age of 17.  Before entering the United States, Amaya was involved with his neighborhood members of the Mara Salvatrucha (MS-13) gang.  Although never an official member, he often served as a "lookout" or "bait."  Amaya left El Salvador and joined his mother in the United States to avoid being "jumped in" as an MS-13 member or "disappeared" by covert government groups.

During high school in the United States, Amaya made friends with another Salvadoran student, who was an MS-13 gang member.  This friend pressured Amaya to get an "MS" tattoo, which he did, getting an "M" tattooed on one bicep and an "S" tattooed on the other.  Despite his tattoos, Amaya maintains that he has never been a member of MS-13, either in El Salvador or the United States.

Amaya dropped out of high school shortly after he turned 18, and began drinking and using both marijuana and hard drugs.  In 2001, he made friends with a local drug dealer, Amir Al-Jabori.  Three years later, Amaya got into an argument with Al-Jabori and shot Al-Jabori five times.  Al-Jabori survived.  Amaya pleaded guilty to first-degree assault under Washington Revised Code § 9A.36.011, and was sentenced to 153 months imprisonment.

After Amaya served his state sentence, DHS placed him in removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an "aggravated felony." Amaya contested his removability. Applying the categorical approach, the Immigration Judge (IJ) held that Amaya was "removable as charged for the assault in the first degree, an aggravated felony crime of violence." Amaya then applied for asylum, withholding of removal, or CAT relief, on the basis that he was likely to be tortured by Salvadoran gangs or the Salvadoran government if removed. After a merits hearing, the IJ issued a decision denying Amaya's application for asylum, withholding, and CAT relief, and ordering his removal.

Amaya appealed to the BIA.[1] The BIA dismissed Amaya's appeal and affirmed the IJ's decision. The BIA held that Amaya's Washington conviction for felony first-degree assault was categorically an "aggravated felony" because it was also a "crime of violence" satisfying 8 U.S.C. § 1101(a)(43)(F). The BIA further concluded that Amaya had "not identified any factual or legal errors that would justify disturbing the [IJ's] decision to deny [Amaya's] application for deferral of removal" under CAT.

Amaya now petitions for review of the BIA's decision. He raises three grounds: Whether his Washington conviction for first-degree assault is an "aggravated felony," thereby rendering him removable; whether he was denied due process of law by the IJ; and whether he is entitled to CAT relief. We will consider each issue in turn.

---

[1] Amaya's supporting brief was untimely, and was therefore not considered by the BIA. Thus, the BIA had only Amaya's Notice of Appeal and its attachments from which to glean Amaya's arguments.

## II. FIRST-DEGREE ASSAULT AS AN "AGGRAVATED FELONY"

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." "Aggravated felony" is a defined term and includes "a crime of violence (as defined in [18 U.S.C. § 16] . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). A "crime of violence" is defined in 18 U.S.C. § 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

We "review de novo whether a criminal conviction is a crime of violence and therefore an aggravated felony rendering an alien removable." *Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1052 (9th Cir. 2011) (as amended). We apply the categorical approach, which requires "compar[ing] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime." *Descamps v. United States*, 570 U.S. 254, 257 (2013); *see also Taylor v. United States*, 495 U.S. 575 (1990) (adopting categorical approach). The statute of conviction is a categorical match "if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps*, 570 U.S. at 257. In the crime of violence context, we compare the state statute to 18 U.S.C. § 16(a), rather than a generic assault statute, and we will only find a categorical match if "*every* violation of the statute *necessarily* involves violent force." *Flores-Vega v. Barr*, 932 F.3d 878, 883 (9th Cir. 2019) (quoting *Solorio-Ruiz v. Sessions*, 881 F.3d 733, 737 (9th Cir. 2018)).

Amaya offers two reasons that his first-degree assault conviction is not an "aggravated felony" under the INA. First, Amaya argues that § 9A.36.011 of the *Washington Revised Code*, the statute of conviction, is overbroad because subsection (1)(b)[2] criminalizes conduct that does not have "as an element the use . . . of physical force" against another person. 18 U.S.C. § 16(a). Second, Amaya argues that his statute of conviction is overbroad because Washington only requires proof of general intent, rather than specific intent, to prove accomplice liability. Amaya is incorrect on both counts.

## A. *Washington's First-Degree Assault Statute*

Amaya argues that the Washington provision under which he was convicted is too broad, and therefore not a categorical match for the INA's definition of a "crime of violence" (and, accordingly, an "aggravated felony") because it punishes someone who administers poison or exposes another person to the human immunodeficiency virus (HIV). At the time of Amaya's conviction, Washington Revised Code § 9A.36.011 provided in relevant part:[3]

> (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

---

[2] Amaya does not dispute that subsections (1)(a) and (1)(c) fall within the scope of a "crime of violence."

[3] Washington revised the statute in 2020. H.B. 1551, 66th Leg., 2020 Reg. Sess. (Wash. 2020). All cites to Washington Revised Code § 9A.36.011 are to the statute as it existed when Amaya was convicted.

> . . . .
>
> (b) Administers, exposes, or transmits to
> or causes to be taken by another, poison,
> the human immunodeficiency virus . . . or
> any other destructive or noxious substance
> . . . .

Washington further defines "great bodily harm" as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." Wash. Rev. Code § 9A.04.110(c).

Contrary to Amaya's assertions, § 9A.36.011(1)(b) satisfies the requirements of 18 U.S.C. § 16(a). First, § 9A.36.011 requires the defendant to act with the "intent to inflict great bodily harm," which Washington courts have said is specific intent. *State v. Thomas*, 98 P.3d 1258, 1263 (Wash. Ct. App. 2004); *see* Wash. Rev. Code § 9A.08.010(1)(a) (defining "intent" to mean that "[a] person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime."). This easily satisfies the "use of physical force" in § 16(a). In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Supreme Court reasoned that "use" equated to "active employment," and therefore requires "a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9. The specific intent embodied in Amaya's statute of conviction is more than enough to satisfy this requirement. Second, we have repeatedly recognized that "indirect" force, like exposure to poison or other harmful substances, satisfies § 16(a)'s force requirement. *See Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1131 (9th Cir. 2016) (poison); *United*

*States v. Melchor-Meceno*, 620 F.3d 1180, 1186 (9th Cir. 2010) (poison); *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003) (anthrax). The Supreme Court has endorsed our understanding that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *United States v. Castleman*, 572 U.S. 157, 170 (2014) (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)). Thus, "the common-law concept of 'force' encompasses even its indirect application," such as "'by administering a poison or by infecting with a disease.'" *Castleman*, 572 U.S. at 170 (quoting W. LaFave, *Substantive Criminal Law* § 16.2(b) (2d ed. 2003)).**[4]**

Intentionally exposing another individual to HIV qualifies as "physical force" because it is "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. As we explained in *De La Fuente*, exposing another to anthrax is physical force because it is capable of causing bodily injury. Even though "[t]he injury and pain caused by anthrax infection may not always be immediately obvious to the person exposed, . . . the bacteria's physical effect on the body is no less violently forceful than the effect of a kick or blow." 353 F.3d at 771. HIV, if untreated, may lead to acquired immunodeficiency syndrome (AIDS), which can lead to severe illness and death. Although HIV is a manageable chronic illness in the United States, it currently requires long-term medical care treatment in order to avoid

---

**[4]** We reject Amaya's contention that *Castleman* is not applicable here. While *Castleman*'s focus was defining "physical force" in the context of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9), its discussion of "force," independent of the *degree* required, is relevant to the inquiry here. *Castleman*, 572 U.S. at 170–71.

the severe consequences of the disease. That is sufficient to show that willfully exposing someone to HIV is "*capable* of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (emphasis added).

Amaya argues that Washington courts have watered down the "exposes, or transmits" requirement in § 9A.36.011 and that Washington permits conviction of someone who merely knows of their own HIV status and engages in consensual sex. But the cases Amaya points to do not support that conclusion. In those cases, the Washington state courts relied on more than the defendant's simple knowledge of his HIV status. In *State v. Whitfield*, 134 P.3d 1203 (Wash. Ct. App. 2006), the court concluded that the facts supported the jury's conclusion that the defendant intended to inflict great bodily harm: The defendant was aware that he could transmit HIV through intercourse; he had "deliberately lied to all of the victims, telling them that he did not have any sexually transmitted diseases while insisting that they engage in unprotected sex with him;" he "sent an email message to one victim stating that he hoped she would get AIDS;" and he "told others that if he knew he had HIV he would try to infect as many people as possible." *Id.* at 1213–14. In *State v. Stark*, 832 P.2d 109 (Wash. Ct. App. 1992), the court relied on the evidence that showed that the defendant had been counseled regarding "safe-sex" methods; he continued to have unprotected sex with the victims; and when confronted, he said "I don't care. If I'm going to die, everybody's going to die." *Id.* at 114. These cases do not demonstrate any "watering down" of the intent requirement.

We cannot see any evidence of "a realistic probability . . . that the State would apply [Wash. Rev. Code § 9A.36.011(1)(b)] to conduct that falls outside the scope of

§ 16(a)," and thus Amaya's conviction qualifies categorically as a conviction for a crime of violence.  *Flores-Vega*, 932 F.3d at 883 (internal quotation marks and citations omitted).

B. *Washington Accomplice Liability*

Amaya also contends that his conviction for first-degree assault has been rendered categorically overbroad by Washington's accomplice liability statute.  Wash. Rev. Code § 9A.08.020(a)(i)–(ii).  Amaya offers us alternative arguments, which require us to examine related but slightly different lines of authority.  Both arguments are complicated, so we will consider them separately.

1.  Washington Accomplice Liability and Specific Intent

Amaya's first argument follows the following logical form:

(1) There is no longer any difference between "principals and aiders and abettors" who are "present at the scene of the crime" or who are "accessories before the fact," *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (emphasis omitted), and thus, when conducting a categorical inquiry, "the criminal activities of . . . aiders and abettors of a generic [crime] must themselves fall within the scope of the [crime defined] in the federal statute," *id.* at 190.

(2) A "crime of violence" as defined in 18 U.S.C. § 16(a) requires proof of specific intent.  *Cf. Leocal*, 543 U.S. at 9 ("[T]he 'use . . . of physical force against the person or property of another'—most naturally

suggests a higher degree of intent than negligent or merely accidental conduct." (quoting 18 U.S.C. § 16(a))); *United States v. Begay*, 934 F.3d 1033, 1039 (9th Cir. 2019) (holding that proof of a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) requires "purposeful conduct").

(3) In Washington, accomplice liability only requires proof of general intent. Wash. Rev. Code § 9A.08.020(a)(i)–(ii); *State v. Thomas*, 208 P.3d 1107, 1111 (Wash. 2009); *State v. Roberts*, 14 P.3d 713, 731–32 (Wash. 2000).

(4) Because Washington requires lesser proof of accomplice liability (general intent), than is required for a "crime of violence" (specific intent), and there is no longer any difference between the culpability of principals and accomplices, a conviction under Washington law necessarily fails to qualify as a categorical crime of violence.

The form of Amaya's argument is proper, but premise (2) is false. We have squarely held that "knowledge" as defined in Washington satisfies 18 U.S.C. § 16(a).[5] In *United States*

---

[5] Under Washington law, "knowledge" means:

A person knows or acts knowingly or with knowledge when:

(i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) He or she has information which would lead a reasonable person in the same situation to believe

*v. Werle*, 877 F.3d 879 (9th Cir. 2017) (per curiam), a Washington case, we held that "knowledge, or general intent, remains a sufficient *mens rea* to serve as the basis for a crime of violence." *Id.* at 882 (citing *Melchor-Meceno*, 620 F.3d at 1186). *Leocal* does not demand anything more. In that case, the Court did not address whether § 16(a) requires proof of specific intent. Rather, the Court held only that § 16(a) requires "a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9. Our decision in *Werle* both cited and followed *Leocal*. *Werle*, 877 F.3d at 882. And the Supreme Court's recent opinion in *Borden v. United States*, — S. Ct. —, 2021 WL 2367312 (2021), reinforces our decision in *Werle*. There, the Court interpreted the almost identically worded 18 U.S.C. § 924(e)(2)(B)(I). It held that § 924(e)(2)(B)(i)'s "required use of physical force against the person of another" "covers purposeful and *knowing* acts, but excludes reckless conduct." *See id.* at *6. *Borden*'s reasoning extends to § 16(a). *See id.* at *7; *see also United States v. Garcia-Lopez*, 903 F.3d 887, 893 (9th Cir. 2018) ("Because the wording of § 924(e)(2)(B)(i) and § 16(a) are virtually identical, we interpret their plain language in the same manner." (quotations and alterations omitted)). Without premise (2), Amaya's argument fails.

---

that facts exist which facts are described by a statute defining an offense."

Wash. Rev. Code § 9A.08.010(1)(b).

2. Washington Accomplice Liability and Generic Accomplice Liability

Amaya's second argument is equally complicated, so we will set it out in its logical form. Only shades different than his argument in the previous section, Amaya argues that:

(1) There is no longer any difference between "principals and aiders and abettors" who are "present at the scene of the crime" or who are "accessories before the fact," *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (emphasis omitted), and thus, when conducting a categorical inquiry, "the criminal activities of . . . aiders and abettors of a generic [crime] must themselves fall within the scope of the [crime defined] in the federal statute," *id.* at 190.

(2) Under Washington law, first-degree assault requires specific intent. *See* § 9A.36.011 (stating that first-degree assault requires proof of "intent to inflict great bodily harm"); § 9A.08.010(1)(a) (defining "intent" to mean that a person "acts with the objective or purpose to accomplish a result which constitutes a crime."); *see also State v. Thomas*, 98 P.3d 1258, 1262 (Wash. Ct. App. 2004) ("Assault in the first degree includes specific intent as an element.").

(3) In Washington, accomplice liability only requires proof of general intent. Wash. Rev. Code § 9A.08.020(a)(i)–(ii); *State v. Thomas*, 208 P.3d 1107, 1111 (Wash. 2009); *State v. Roberts*, 14 P.3d 713, 731–32 (Wash. 2000).

(4) Because principals and accomplices who are either present at the scene or accessories before the fact are equally culpable, but under Washington law accomplices may be subject to a diminished standard of proof due to the different mens rea required, accomplice liability in Washington is broader than generic accomplice liability.

Amaya's proposition (4) follows from his premises and would be a forceful argument if his analysis governed every application of the categorical approach to Washington crimes. It does not, however, and is now beside the point. We will explain.

We first addressed similar arguments in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017). In that case, Valdivia-Flores appealed his conviction under 8 U.S.C. § 1326 for attempted reentry of a removed alien. Valdivia-Flores challenged his conviction by collaterally attacking a 2009 removal order, which was based on his 1997 conviction in Washington for possessing heroin with the intent to deliver it. As here, we considered whether his conviction under Washington's drug trafficking statute, Wash. Rev. Code § 69.50.401, was an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). Section 924(c) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." In other words, in *Valdivia-Flores*, whether Washington's drug trafficking statute was a categorical match for an "aggravated felony" as

defined by 8 U.S.C. § 1101(a)(43)(b) had to be determined by comparing it to the federal statutory scheme. Citing *Duenas-Alvarez*, we observed that "aiding and abetting liability" is "implicit . . . in every criminal charge," including federal crimes. *Valdivia-Flores*, 876 F.3d at 1207. We then found that "the Washington drug trafficking law on its face appears to have a more inclusive mens rea requirement for accomplice liability than its federal analogue," *id.*, and thus "Valdivia-Flores's conviction cannot support an aggravated felony determination," *id.* at 1209 (footnote omitted).[6] *See also Alfred v. Garland*, No. 19-72903, 2021 WL 4302692 (9th Cir. Sept. 22, 2021) (following *Valdivia-Flores*); *United States v. Franklin*, 904 F.3d 793, 797–98 (9th Cir. 2018) (same), *abrogated on other grounds*, *Shular v. United States*, 140 S. Ct. 784 (2020).

The rule we adopted in *Valdivia-Flores* might well have meant that "no Washington state conviction can serve as an aggravated felony at all." *Valdivia-Flores*, 876 F.3d at 1209 (quoting the government; cleaned up). We rejected that proposition in *United States v. Door*, 917 F.3d 1146 (9th Cir. 2019). Door had been convicted in Washington of felony harassment and was looking at a sentencing enhancement under U.S.S.G. § 4B1.2(a) for having committed a "crime of violence," which contains a force clause identical to the definition of "crime of violence" in § 16(a). *Compare* U.S.S.G. § 4B1.2(a)(1) *with* 8 U.S.C. § 16(a). Citing *Valdivia-Flores*, Door argued that "because every

---

[6] We also found that "Washington law is clear that jurors need not agree on whether a defendant is a principal or accomplice" and thus "the drug trafficking statute is not divisible so far as the distinction between those roles is concerned" and "the modified categorical approach may not be applied." *Valdivia-Flores*, 876 F.3d at 1210.

Washington criminal statute incorporates aiding and abetting, all Washington criminal statutes are overbroad, and therefore *all* Washington state convictions fail to qualify as crimes of violence." *Door*, 917 F.3d at 1152. We squarely rejected his argument, however, because it "overlook[ed] the analytical difference between the force clause and the enumerated offenses clause."[7] *Id.* We explained that in *Valdivia-Flores*, the categorical analysis "involved comparing the elements of the Washington drug trafficking crime with the generic federal offense of drug trafficking." *Id.* at 1153. "Generic federal offenses" are *enumerated offenses* that require comparing a state statute with its federal counterpart. By contrast, in *Door*, as here, we were measuring the Washington statute against a *class* of offenses defined by "the use, attempted use, or threatened use of physical force." *Valdivia-Flores* was an exercise in mapping a state crime

---

[7] The current version of U.S.S.G. § 4B1.2(a) defines "crime of violence" as follows:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one years, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Subsection (a)(1) is known as the "elements or force clause," while (a)(2) is referred to as the "enumerated offenses clause."

onto a federal crime;**[8]** *Door* was an exercise in category. We held that the difference was significant. Because Door's conviction for felony harassment "necessarily entails the threatened use of violent physical force, it qualifies as a crime of violence pursuant to the force clause, and our inquiry ends there." *Id.* We thus held that we "need not compare the elements of the crime of conviction with the elements of the generic federal crime when analyzing whether an offense qualifies as a crime of violence pursuant to the force clause." *Id.*

*Door* governs this case, and it renders Amaya's proposition (4) irrelevant. As in *Door*, our analysis here concerns the *force inquiry*, not a comparison to an *enumerated offense*, as we did in *Valdivia-Flores*.**[9]** Thus, *Valdivia-Flores* does not require us to compare Washington's underlying accomplice liability mens rea to the generic federal accomplice liability mens rea. For the reasons we have previously described, it is sufficient that Washington's first degree assault statute requires proof of assault "with intent to inflict great bodily harm." Wash. Rev. Code § 9A.36.011(1); *see also United States v. Calvillo-Palacios*,

---

**[8]** We note that there is no suggestion in *Valdivia-Flores* that the defendant had been charged as removable under alternate aggravated felony provisions. Therefore, we had no occasion to consider the differences between an enumerated offense aggravated felony and a crime of violence aggravated felony under the INA.

**[9]** The INA's lengthy definition of "aggravated felony" includes enumerated offenses—*e,g,*, 8 U.S.C. § 1101(a)(43)(A) ("murder, rape, or sexual abuse of a minor")—but we are only concerned here with a "crime of violence," as defined in the equivalent of the force clause in 18 U.S.C. § 16(a). *See* 8 U.S.C. § 1101(a)(43)(F).

860 F.3d 1285, 1290 (9th Cir. 2017). That is all that *Door* demands. *See Door*, 917 F.3d at 1153.

\* \* \*

Section 9A.36.011 is categorically a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F),[10] and the BIA correctly determined that Amaya is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an "aggravated felony."

## III. DUE PROCESS

Amaya asserts that the BIA erred by ignoring his due process claim of IJ bias. We ordinarily review due process challenges de novo. *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003). However, Amaya failed to exhaust his due process claim before the BIA. *See Barron v. Ashcroft*, 358 F.3d 674, 677–78 (9th Cir. 2004) (claims must be exhausted to be raised in a petition for review). A "conclusory statement does not apprise the BIA of the particular basis for [the petitioner's] claim" nor "meaningfully challenge the IJ's decision on appeal." *Rizo v. Lynch*, 810 F.3d 688, 692 (9th Cir. 2016). Neither his notice of appeal nor his attachment thereto made a clear, non-conclusory argument in support of his claim. We cannot say that the BIA ignored a clearly-identified due process

---

[10] Amaya does not dispute that he was sentenced to a "term of imprisonment [of] at least one year" as § 1101(a)(43)(F) requires.

argument.[11]   Amaya thus failed to exhaust his claim before the BIA, and we lack jurisdiction to reach the underlying merits of Amaya's due process claim. *See Sola v. Holder*, 720 F.3d 1134, 1136 (9th Cir. 2013) ("Challenges to procedural errors correctable by the administrative tribunal, must be exhausted before we undertake review." (alterations and quotation omitted)); *Barron*, 358 F.3d at 677–78. We dismiss that portion of his petition.

## IV. DENIAL OF CAT RELIEF

Amaya also challenges the agency's denial of his application for deferral of removal under CAT.[12]   We review questions of law de novo and factual determinations for substantial evidence. *De Rodriguez-Echeverria v. Mukasey*, 534 F.3d 1047, 1050 (9th Cir. 2008). We conclude that the agency did not err in denying Amaya's application for deferral of removal under CAT. Because the BIA concluded that Amaya "ha[d] not identified any factual or legal errors that would justify disturbing the [IJ's] decision to deny [Amaya's] application . . . for failure of proof," we "look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000).

---

[11] To the extent that Amaya's brief can be read as arguing that the BIA's rejection of his brief was itself a violation of due process, we disagree. Amaya was clearly informed of the deadline to file his briefs and failed to file them timely. Nothing prevented Amaya from filing a motion to reopen or for reconsideration with the agency before this appeal.

[12] Amaya does not challenge the denial of asylum, withholding of removal, or withholding under CAT, which were foreclosed by his aggravated felony conviction.   8 U.S.C. §§ 1158(b)(2)(B)(i), 1231(b)(3)(B)(ii).

The IJ laid out the correct legal standard for obtaining CAT protection, considered Amaya's concern that he would be harmed by the Salvadoran government, and found that Amaya "was never harmed in the past by the government of El Salvador." As the BIA recognized, the IJ "considered the totality of the record evidence," including the country conditions reports, in determining that Amaya did not establish "that it is more likely than not that he will be tortured by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity in El Salvador." To the extent Amaya challenges the IJ's focus on his claim that the government of El Salvador would acquiesce in his torture by gangs, this focus mirrors Amaya's testimony, submissions, and the testimony of supporting witnesses, which focused on the threat from the gangs and government acquiescence rather than a fear of the government committing the torture itself. Given the lack of evidence supporting a claim of torture by the government, and the evidence demonstrating that El Salvador does not acquiesce to gang violence, substantial evidence supports the agency's denial of CAT relief.

## V. CONCLUSION

We conclude that Washington Revised Code § 9A.36.011 is categorically an "aggravated felony," making Amaya removable under 8 U.S.C. § 1227(a)(2)(A)(iii). We are without jurisdiction to review Amaya's unexhausted due process claim. The agency's determination that Amaya was not entitled to CAT relief was supported by substantial evidence.

**DENIED in part and DISMISSED in part.**